JOHN S. PICKETT, Judge ad hoc.
This is a tort action instituted by Ralph W. Kenning against Herrin Transportation Company to recover damages for injuries alleged to have been sustained by him while on the premises of the Herrin Transportation Company.
The suit grows out of an accident which it is claimed, occurred about 8 o’clock a. m., July 4, 1959, in the yards at the warehouse of the Herrin Transportation Company, which we will sometimes hereinafter refer to as Herrin, while plaintiff and Frank Gennusa, employees of the National Biscuit Company, hereinafter referred to as Nabisco, were unloading some packages of crackers from a trailer. Nabisco had sent plaintiff and Frank Gennusa to Her-rin’s warehouse and yards to obtain a part of a shipment of crackers destined for delivery to Nabisco, but which could not be delivered on that day because it was a holiday. In the operation of unloading the crackers, a steel plate or platform had been placed to span a space between Her-rin’s unloading dock and the trailer, upon which steel plate plaintiff was walking when it fell with him and caused the fracture of his left leg and other injuries.
The claim is predicated on allegations of negligence on the part of defendant, Herrin, in failing to provide plaintiff a safe place to work by failing to back the trailer flush against the loading wharf, and in placing a steel plate, or platform in an unsafe position, and in directing, inviting and/or allowing plaintiff to use the plab *883 form in the unloading' operation. The defense relies on a general denial of the material allegations of plaintiffs original and supplemental petitions, and, alternatively, on a plea of contributory negligence. Trial on these issues resulted in a judgment rejecting plaintiff’s demands. The plaintiff has appealed to this court.
Plaintiff’s employer discovered that it would need about three hundred boxes of crackers from a shipment originating in Houston, which would arrive in New Orleans on the morning of July 4th, 1959. A Mr. Roshay, a supervisory employee of Nabisco had learned that because of July 4th being a holiday, Herrin would be unable to deliver the shipment to Nabisco that day, for the reason that it would have no crew available. Mr. Roshay made arrangements with Mr. Charles J. Fox, the dock foreman for Herrin, to permit two of Nabisco’s employees to obtain the crackers from the trailer in Herrin’s yard when it arrived on the morning of the 4th of July. Pursuant to this arrangement, plaintiff and Mr. Frank Gennusa went to the Herrin yards around 7 o’clock a. m., July 4, for the purpose of obtaining the crackers. They went to the office of defendant, Herrin, and inquired about the trailer shipment of crackers. It so happened that the truck which brought the trailer containing the crackers into the Herrin yard had arrived only a few minutes before plaintiff and his fellow employee arrived at Herrin’s Terminal office, where they met the driver, Lawrence Jeanis, who had picked up the trailer at Lafayette. Jeanis and the night watchman pointed out the trailer to plaintiff and Gennussa.
The trailer containing the crackers had been parked some two or three feet from the loading wharf. Gennusa asked the driver, Jeanis, to park it flush against the loading wharf. But Jeanis had already cut his truck loose from the trailer and connected it to another trailer which he planned to take back to Lafayette after his rest period; and he declined to move the trailer. Gennusa then asked Charlie Miller, the night watchman, to get a steel plate or platform, to span the distance from the loading wharf to the trailer in order to make the merchandise more accessible from the loading wharf. Miller located a plate and took it to the Nabisco men on a flat car. Gennusa backed the Nabisco truck up to the dock beside the trailer, broke the seal and opened the doors of the trailer. The trailer floor was some eight to twelve inches above the wharf so he was able to open the trailer doors without hindrance. The trailer was loaded all the way to the back end, and he first removed several bundles of cookies, to make room to slide one end of the steel plate into the trailer. When room had been made in the trailer, plaintiff, Gennusa and Miller, the night watchman, placed the steel plate in position by placing one end of it on the wharf and the other end up in the trailer. Because of the difference in the heighth of the floor of the trailer and the dock, the steel plate sloped downward, toward the dock. Plaintiff then proceeded to walk on the steel plate into the trailer, pick up bundles of crackers, walk back down the plate to the dock, and either hand the bundles to Gennusa, who was in the Nabisco truck, or stack them by the side of the Nabisco truck, where Gennusa could' reach them. Plaintiff walked up across the plate into the truck and back again to the-dock for something like an hour, and until' he and Gennusa thinking they had about all the crackers they needed, stopped to count them. During all this time neither plaintiff nor Gennusa inspected the plate to see if it had slipped or was safely in position. Having counted the bundles of crackers, they found they needed twenty-five more boxes. Plaintiff went back to get the additional boxes, and when he-walked up on the plate, it fell and he fell' in such a way that his left leg was fractured and he sustained other injuries. Neither plaintiff nor Gennusa, who were the only-persons present, knew exactly how the accident occurred; but both of them speculated that the plate having been constantly *884 walked -upon for some time, gradually slipped down on the dock, until the end of the plate in the trailer slipped off and went down first. Therefore, the falling of the steel plate was the immediate cause of plaintiff’s injuries.
Plaintiff contends that Herrin understood, consented to and granted permission for two Nabisco men to unload the Herrin truck; and that the arrangement was for the mutual advantage of both parties, since Nabisco could get their crackers and Her-rin would not have to pay a crew overtime for working on a holiday. Based on the premise that the operation is for the mutual benefit of both Nabisco and Herrin, plaintiff concludes he was an “invitee” on Her-rin’s premises, at the time of his injury. To the contrary defendant insists that plaintiff was a “licensee”. In Alexander v. General Accident Fire and Life Assurance Corporation, La.App., 98 So.2d 730, the terms “licensee” and “invitee” are defined as follows:
“A licensee is one who enters the premises with the occupier’s express or implied permission, but only (according to the conventional description) for his own purposes which are unconnected with the occupant’s interests; and to him in addition to the duty owed to a trespasser, is owed the duty of warning the licensee of latent dangers of the premises if actually known by the occupier.
“An invitee is a person who goes on the premises with the express or implied invitation of the occupant on •the business of the latter or for their mutual advantage; and to him, the duty owed is that of reasonable and ordinary care, which includes the prior discovery of reasonably discoverable conditions of the premises that may be unreasonably dangerous, and correction thereof or a warning to the invitee of the danger.”
In Mercer v. Tremont and G. Ry. Company, La.App., 19 So.2d 270, from which plaintiff quoted extensively the court distinguished between a “licensee” and an “invitee” as follows:
“Another way of making the distinction between these two classes would be to say the purpose of the use of the premises by a licensee is essentially beneficial to himself alone, whereas the use of the premises by an invitee is in furtherance of the interests of both the invitee and the possessor of the premises. In one instance the benefits to be derived from the use accrue to one party only, whereas in the other case the benefits would be mutually advantageous.”
If it is found that plaintiff was an invitee, the duty owed him by defendant is greater than if he occupies the status of a licensee. The duty of defendant to keep the property safe for all the uses of the invitee is set forth in 65 C.J.S. Negligence § 49, page 541, as follows :
“There is a duty to keep premises which are within the scope of the invitation safe for all uses by an invitee, and the owner or person in charge is not bound to keep them safe for uses which are outside of the scope and purpose of the invitation, for which the property was not designed, and which could not reasonably have been anticipated, except where he is present and actively co-operates with the invitee in the particular use of the premises. The mere passive acquiescence by the owner in the use of the property by an invitee beyond the limits of the invitation imposes no obligation on the owner to keep it in a safe condition for the benefit of the user.”
The duty of the owner to keep his premises safe for invitees as to defects and dangers is set out in 65 C.J.S. Negligence § 50, pages 541-542, as follows:
“The duty to keep premises safe for invitees applies only to defects or con *885 ■ditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal, obvious, or ordinary risks attendant on the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers.”
There is no allegation and no evidence that defendant’s premises were unreasonably dangerous or unsafe, or that there were hidden dangers, traps, snares, pitfalls and the like that were not known to plaintiff, or which would not have been observed by him in the exercise of ordinary care. Plaintiff contends that the failure of the defendant to back the trailer flush against the wharf created an unsafe place for him to unload the merchandise. Plaintiff has not explained how parking the trailer, in the position he and his fellow employee found it, created a dangerous situation.
It is conceivable that had the trailer been hacked up against the loading wharf, the merchandise could have been unloaded with greater ease. But there is no evidence that there was anything inherently dangerous or unsafe about the trailer.
The accident which caused plaintiff’s injuries shows that it was dangerous to use the steel platform to span the space between the trailer and the dock. But Mr. Gen--nusa readily admitted that the use of the metal plate was his idea; and that it was at his request that the night watchman obtained the steel plate for him. At Mr. Gennusa’s request the night watchman assisted him and plaintiff place the plate in -position to span the space between the ■trailer and the dock. The evidence also ■discloses that Herrin’s steel plates are used to roll loading and unloading equipment from the wharf into and out of the trailers; and that the -plates were not designed nor intended to be used in the manner plaintiff and his fellow employee used the one involved in plaintiff’s accident. But plaintiff complains that he was inexperienced in unloading trailers and was not aware of the danger involved in the use of the steel plate. However, he was being assisted by his fellow employee, Frank Gennusa, who was either aware of the danger, or should have been aware of it. Mr. Gen-nusa had been a truck driver 18 years out of the last 33 years, and the remainder of the time he had worked in a warehouse. He was familiar with trucks and trailers and in loading and unloading them. In fact, Gennusa admitted his employer uses aluminum type plates somewhat similar to the steel plates used by Herrin; and that he is familiar with their use. He knew the metal plates are equipped with safety devices or should be so equipped, to keep them from sliding, or slipping. Gennusa, also admitted there was nothing wrong with the steel plate used by him and plaintiff, except that it was on a slant and there was no safety device underneath to keep it from slipping. However, he knew it was on a slant; and he knew it was not equipped with a safety device. Therefore, if plaintiff, because of his lack of experience, was not aware of the danger to which he was exposing himself, his co-employee did know of it. The evidence does not disclose that defendant knew of plaintiff’s danger, or was instrumental in setting up the equipment which plaintiff claims caused him injuries.
The facts and circumstances of this case are such that it is not necessary to determine whether plaintiff was a “licensee,” or an “invitee,” for the reason that, if we assume plaintiff was an invitee, the status most favorable to him, he cannot prevail, because, whatever negligence there was involved in this case was on the part of plaintiff, or his co-employee, Frank Gennusa, or both of them. They chose their method of unloading the trailer. The trial court having seen and heard the witnesses, stated *886 immediately after the termination of the evidence:
“The Court fails to find any negligence on the part of the Herrin Transportation Company in this whole transaction. Therefore there will be judgment in favor of the defendant dismissing plaintiff’s suit.”
We are in agreement with this finding.
Therefore, for the reasons assigned the judgment appealed from is affirmed. Plaintiff-appellant to pay all costs.
Affirmed.