160 So.2d 319 (1964)
Mrs. and Mrs. Lester C. BARRILLEAUX
v.
NOBLE DRILLING CORPORATION, Joseph Alford, Jr., and the Aetna Casualty and Surety Company.
No. 1266.
Court of Appeal of Louisiana, Fourth Circuit.
February 3, 1964.
*320 Harold L. Molaison, Gretna, Duke & Porterie, New Orleans, for plaintiffs-appellants.
Adams & Reese, Thomas J. Wyllie, New Orleans, for defendants-appellees.
Before REGAN, YARRUT and CHASEZ, JJ.
YARRUT, Judge.
Plaintiffs have taken this appeal from an adverse judgment in favor of Defendants.
Plaintiffs are the parents of a 19-year old, unmarried, son (Lester). They sue Defendants for $50,537.50, loss occasioned when their son drowned following a slip, or fall, on a drilling barge owned by Defendant (Noble Drilling Corporation) while seeking Defendant (Joseph Alford, Jr.), who was employed as a tool pusher (foreman) on the barge. Aetna Casualty and Surety Company was joined as Defendant, being the liability insurer of the first-named Defendant.
Noble Drilling Corporation will be referred to herein simply as "Noble," and Joseph Alford, Jr. as "Alford."
Noble was dismantling its drilling barge at its marine yard on Bayou Barataria at Lafitte, La. Alford was sent to the barge late in the afternoon to supervise the pumping of water from the barge which threatened its sinking. He was about to eat his dinner at home but, because of the emergency, left home without eating. His wife, who was ill, said she would bring his dinner to the yard if she felt better and was able to do so. Being too ill, Mrs. Alford requested her mother, Mrs. Harvey, to take the dinner to the shipyard. Mrs. Harvey knew Plaintiffs' son (Lester) who was employed at a filling station near the yard. She requested, and Lester agreed, to drive the Alford automobile and accompany Mrs. Harvey to the yard.
The automobile arrived at the shipyard after dark, about 7:30 P.M., March 28, 1960, and stopped near to, and facing, the barge with its headlights burning. Lester left the automobile to board the barge, without taking the lunch. Mrs. Harvey and her 12-year old grandson both testified that Mrs. Harvey warned Lester not to climb the ladder to board the barge. Lester, however, did so, and was last seen at the top of the ladder leading from the yard to the deck of the barge.
*321 When Lester did not return to the automobile Alford was notified and, after a search, Lester's body was found in the key-slot, which divided the barge into two floating sections, fore and aft, with the water of the Bayou below to permit drilling operations.
Across this dividing key-slot was a small grating, several feet wide, for passage, which was not illuminated or marked. Notwithstanding the warning from Mrs. Harvey, Lester boarded the barge, stumbled into the key-slot, into the water below, and drowned.
Plaintiffs charge Defendants (Noble and Alford) with the following acts of negligence:
"NOBLE DRILLING CORPORATION:
"1) In having an extremely dangerous premises without any warning signs, guards or guardrails or proper lighting to safeguard invitees who they knew or should have known were to come to the premises.
"2) In not having proper employee regulations to prevent their inviting invitees aboard such a dangerous premises.
"3) In having men work in such a remote area and on such short notice that someone foreseeably could be expected to have to bring them lunch and encounter the pitfalls and dangerous conditions in their premises.
"4) In specifically inviting young Barrilleaux, through their employee Joseph Alford, Jr., acting during the course and scope of his employment, to come into the dangerous area where he was entrapped and lost his life.
"JOSEPH ALFORD, JR.:
"1) In inviting Lester C. Barrilleaux, Jr. to come into a very dangerous area without sufficiently warning him.
"2) In failing to leave some note of warning of the dangerous condition that existed on the barge.
"3) In making a request that his lunch be brought to him on a job that he knew contained a dangerous area with a trap, without sufficiently warning those who were to come of the pitfalls and dangers that existed.
"4) In failing to keep a proper lookout for someone he knew would bring his lunch to warn them against the dangers that befell them."
Defendants denied all allegations of negligence and, in the alternative, pleaded Lester's contributory negligence in going upon the barge in the dark while it was being dismantled, in the face of apparent danger, and in spite of Mrs. Harvey's warning not to board the barge.
The District Judge in his reasons for judgment stated, inter alia:
"The Court cannot speculate as to Barrilleaux's actions after he boarded the barge. It is necessary to prove not only that defendant was negligent but, further, that such negligence was the proximate cause of the resulting death. The Court appreciates the difficulties plaintiffs encounter in meeting this burden. However, the burden is imposed by law, and there is no more reason to suppose that Barrilleaux tripped over a loose object on the deck or blindly walked off the catwalk than there is to suppose that he fell while leaning over and looking at something in the water or attempting to jump across the key slot."
We must first classify Lester's status when he climbed the ladder to reach the deck of the barge; whether he was a "trespasser," or "licensee," or "invitee." The case of Alexander v. General Accident Fire & Life Assurance Corp., La.App., 98 So.2d 730, clearly defines them as follows:
"(1) A trespasser is one who enters the premises without the permission of *322 the occupier or without a legal right to do so; and towards the trespasser no duty exists in most instances except to refrain from willfully or wantonly injuring him.
"(2) A licensee is one who enters the premises with the occupier's express or implied permission, but only (according to the conventional description) for his own purposes which are unconnected with the occupant's interests; and to him in addition to the duty owed to a trespasser, is owed the duty of warning the licensee of latent dangers of the premises if actually known by the occupier.
"(3) An invitee is a person who goes on the premises with the express or implied invitation of the occupant on the business of the latter or for their mutual advantage; and to him, the duty owed is that of reasonable and ordinary care, which includes the prior discovery of reasonably discoverable conditions of the premises that may be unreasonably dangerous, and correction thereof or a warning to the invitee of the danger."
Since Mrs. Harvey substituted for her daughter to take Alford's dinner to him at the shipyard she represented Alford when she warned Lester not to board the barge. In ignoring this warning Lester became a "trespasser," to whom no duty was owed by Defendants except to refrain from willfully and wantonly injuring him. Alford testified he had never met and was not acquainted with Lester.
However, assuming Lester did enjoy the status of a licensee or invitee on the premises, Noble was not obligated to anticipate that he would board the partially dismantled barge at night and in the darkness. The owner or occupier of premises has only the duty to exercise reasonable or ordinary care for an invitee's safety, commensurate with the circumstances involved. Himel v. Ryder, 146 So.2d 209 (La.App. 1962). They are only required to keep the premises reasonably safe within the scope of the invitation. 65 C.J.S. Negligence § 49, p. 541, quoted with approval in Kenning v. Herrin Transportation Company, 148 So. 2d 881 (La.App.1963). The only risk that could reasonably be anticipated from Alford's acquiescence in his wife's suggestion that she might bring his dinner, was that she might drive to the shipyard before dark and summon him. It would be unreasonable and foolhardy for him to anticipate that his sick wife, or any substitute, would climb aboard the barge at night to look for him. Defendants could hardly be required to completely light up the barge in anticipation of the wife or Lester attempting to board the barge. Furthermore, should any invitation, expressed or implied, have existed for Lester's presence, it terminated in front of the barge when Mrs. Harvey warned Lester not to go on the barge. Defendants, therefore, had no duty to make the barge safe for him or any other trespasser.
Lester's contributory negligence was the initial boarding of a darkened, partially dismantled, drilling barge at night, without the aid of a light or any experienced person to guide him. The danger of this act was apparent to Mrs. Harvey who expressly warned him against it. Lester's negligence in boarding the barge was the sole and proximate cause of his drowning. Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298.
However sad this tragedy is to Plaintiffs, to hold Defendants responsible under the facts and circumstances of this case would, in effect, constitute Defendants the absolute insurers of Lester's safety while boarding or moving on the barge.
For the reasons herein assigned, the judgment of the District Court in favor of Defendants must, therefore, be affirmed; Plaintiffs to pay costs in both courts.
Affirmed.