384 So.2d 1011 (1980)
Ruby R. Sevin, wife of/and Eddie J. SEVIN
v.
SHAPE SPA FOR HEALTH & BEAUTY INC. and Market Facilities/Houston, Inc.
No. 11175.
Court of Appeal of Louisiana, Fourth Circuit.
June 3, 1980.
McCann & Volk, John J. McCann, New Orleans, for plaintiffs-appellants.
Porteous, Toledano, Hainkel & Johnson, Edward J. Brandao, New Orleans, for defendant-appellee.
Before SAMUEL, BOUTALL and BARRY, JJ.
*1012 BARRY, Judge.
Plaintiff was a member of the defendant spa where she allegedly slipped and fell inside a whirlpool bath and injured her back. Plaintiff's lawsuit charges defendant with various acts of negligence including improper maintenance of the premises, failure to warn of a danger, and faulty steps. Defendant's answer alleges plaintiff's negligence, contributory negligence, and assumption of risk. Following plaintiff's case in chief defendant moved for dismissal under LSA-C.C.P. Art. 1810(B). A directed verdict was granted and plaintiff now appeals.
Before reviewing plaintiff's evidence we must determine what weight or standard the trial judge sitting without a jury should accord plaintiff's evidence under Art. 1810(B). Able counsel for plaintiff strongly advocates that evidence should be weighed in the light most favorable to plaintiff's case. The alternative is for the trial judge to evaluate plaintiff's case in chief based on a preponderance of the evidence.
We are satisfied that this question is res nova. LSA-C.C.P. Art. 1810 is of very recent vintage (1977). The first paragraph (A) provides for a directed verdict in the District Court sitting with a jury; and paragraph (B) allows a directed verdict by the trial judge sitting without a jury.
Unfortunately, Art. 1810 does not establish any standard for the trial court to use in weighing evidence on a defendant's motion for dismissal.
Plaintiff urges the holding in Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir., 1979) which said that all of the evidence should be viewed in the light most favorable to the party opposing the motion; if there is evidence of such quality and weight that reasonable and fair minded persons in the exercise of impartial judgment might reach different conclusions, a motion for directed verdict should be denied. Campbell, 373 So.2d at 239. However, that case does not apply here since the decision involved a jury trial and application of paragraph (A) under Art. 1810. The Third Circuit in Campbell adopted the philosophy of our federal courts in interpreting Art. 1810 (A) by looking to the parallel provisions of F.R.C.P. Rule 50(a). Both this court and the First Circuit have followed that same reasoning in jury cases on directed verdicts. See: Ragas v. Argonaut Southwest Ins. Co., 379 So.2d 822 (La.App. 4th Cir., 1980); Perkins v. American Machine & Foundry Co., 385 So.2d 492 (La.App. 1st Cir. 1980). Application of this federal counterpart was made in Boeing Company v. Shipman, 411 F.2d 365 (5th Cir., 1969) which said that the trial judge, when considering a motion for directed jury verdict, may grant the motion only when "facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict ...". 411 F.2d at 374.
Plaintiff, in argument and brief, refers to a number of decisions in other states which support the general proposition that the trial court must consider plaintiff's evidence in a light most favorable to the party against whom the motion is directed. However, all were jury cases applicable to the standard of paragraph (A) of Art. 1810. Is the severe restriction on the trial judge under (A) applicable here when we are not concerned with plaintiff's right to a jury determination of the facts?
Article 1810(B) basically tracts the language in the second sentence of F.R.C.P. Rule 41(b). We have no doubt this procedural innovation found its way into our state statutes via the conceptual origin in the federal system. One solution would be to utilize the logic in Madison v. Traveller's Insurance Company, 308 So.2d 784 (La.1975) which held that when state rules of procedure are obtained from federal rules the state courts may look for guidance to federal decisions which have interpreted identical provisions. In Emerson Electric Co. v. Farmer, 427 F.2d 1082 (5th Cir., 1970) the Fifth Circuit in referring to F.R.C.P. rule 41(b) said: "The Judge should now ordinarily evaluate the evidence without making special inferences in the Plaintiff's favor. The Court should go ahead and resolve the *1013 case on the basis of preponderance of the evidence." 427 F.2d at 1086.
In civil cases, following a complete trial, the trial judge has the responsibility to weigh and evaluate all evidence and ultimately render a decision based upon a preponderance of evidence. Suppose here following the plaintiff's case in chief the defendant rested without presenting any evidence. Then the trial court would render its decision based upon the same facts it had when plaintiff rested. The outcome in this example would be the same as we now have before us with the granting of a directed verdict. Realistically, this defendant would not offer any evidence if this case was remanded for further proceedings. The district judge must eventually render a decision and it is reasonable and logical for him to apply the same standard to evidence following a motion for directed verdict or following a completed trial. Despite the harsh results of a directed verdict, we have no alternative but to apply the standard of preponderance of evidence under the provisions of Art. 1810(B).
A review of the facts will determine if plaintiff sustained her proper burden of proof. Plaintiff alleges that on her eighth visit to the Spa in a 13 day period she injured her back when she slipped and fell on the first or second step located inside the whirlpool bath. Her petition and the pretrial order assert a "substance" was on the steps. Mrs. Sevin arrived at the Spa by 9:00 a. m. (opening time) as she had done on previous occasions. She completed her routine, showered, then proceeded to the whirlpool. An employee of the Spa was cleaning the area with a solution that formed suds which she hosed down. Mrs. Sevin had seen this cleaning on prior visits. It is uncontroverted that no signs were posted to warn patrons of the potentially slippery area nor was any barricade used to set off the cleaning area.
Mrs. Sevin candidly admitted that she did not recall walking through any of the suds to reach the whirlpool. She testified that while on a step inside the whirlpool and while her foot was under water, she slipped and injured her back. She did not know what caused her to slip, she could not identify any foreign substance on the step, nor is there any evidence how her slip occurred. This testimony contradicts her allegations in the petition and pre-trial order about a "substance" on the steps. There were no witnesses.
We feel it is reasonable to believe that Mrs. Sevin did fall in the whirlpool. Her testimony is positive and basically corroborated by the testimony of a Spa employee who recalled a report of the incident. Records show that plaintiff was at the Spa on the date of the alleged accident and it was also her last visit.
Since Mrs. Sevin stated she didn't remember walking in the suds on the floor we must assume she entered the whirlpool without soap or any other foreign substance on her feet. At this point the record is void of any positive evidence as to why Mrs. Sevin fell. The only basis for a claim would be that the steps inside the whirlpool were slippery or had become slippery because the suds being hosed down entered the whirlpool and formed the "substance" which caused her fall. It is interesting to note Mrs. Sevin's testimony that the cleaning process of suds on the tile floor had occurred on her prior visits to the Spa. She did not testify that the steps inside the whirlpool were slippery on prior occasions.
Part of plaintiff's excellent presentation included floor diagrams which indicate that a water drain was located directly next to the whirlpool. We have no evidence that the drain did not eliminate the sudsy water or that inside the whirlpool was soapy because of the suds on the floor. Nor is there evidence what foreign object or substance could have caused Mrs. Sevin to fall.
Seeking the cause of her fall requires mention of plaintiff's prior back condition. Mrs. Sevin said in a deposition she had a back problem "since I was a young kid" and had been treated by several physicians for a continuing back problem which was described in 1966 as "low back pain syndrom, acute recurrent". She went on sick leave from her employer because of a back injury received *1014 in an automobile accident in 1972, and was granted a disability retirement from her employer in 1974. The accident occurred on August 6, 1973.
She did not seek medical attention for two weeks after the alleged fall and failed to mention the fall to her orthopedic physician because she thought it was the continuing back problem that she had been treated for in prior years. When questioned on cross examination about the possibility that her knees "buckled" causing the fall, Mrs. Sevin responded "I have no idea". From the time of the accident until surgery she suffered additional falls which, according to the orthopedist, Dr. Accardo, was due to poor circulation.
The defendant Spa owner testified that the steps into the whirlpool were "low rise" each measuring about seven inches in height and there were two hand-rails spaced 20½ inches apart. He further testified that the water is filtered by a pump on a 24 hour basis and is circulated by a 7½ horsepower pump. Most importantly, defendant stated that the whirlpool was inspected regularly by a number of people and there was never a report of a slippery substance on the steps nor did he know of any such danger.
We cannot overlook Mrs. Sevin's testimony (four different times) that she did not know what caused her to fall, and her testimony (six times) that she did not know if there was anything on the floor in the areas where she walked.
We agree with plaintiff's counsel that Mrs. Sevin was an "invitee" and as such is owed the duty of reasonable and ordinary care. This includes the prior discovery of reasonably discoverable conditions on the premises that may be unreasonably dangerous, and correction thereof or a warning to the invitee of the danger. Barrilleaux v. Noble Drilling Corporation, 160 So.2d 319 (La.App. 4th Cir., 1964).
Mrs. Sevin did not state that the suds on the floor in the wet area affected her mobility. Considering the repeated usage of the whirlpool by Mrs. Sevin, it is logical to conclude that the steps were not slippery on prior occasions because of the cleaning operation and it is highly improbable that the situation would be any different on the day of the alleged accident.
We take judicial cognizance that areas of a spa with a swimming pool, showers, whirlpool bath, cold dip bath, et cetera, by their very nature contribute to moisture and water in the areas surrounding these facilities.
Plaintiff's counsel cites in his brief the following jurisprudence which we distinguish from the above facts:
Truxillo v. Gentilly Medical Building, Inc., 225 So.2d 488 (La.App. 4th Cir., 1969). This case involved an office building where areas were mopped but not roped off or with warning signs.

Brown v. Southern Ventures Corporation, 331 So.2d 207 (La.App. 3rd Cir., 1976). Fall into a motel swimming pool when loose coping caused the fall.
Owens v. New Orleans Bldg. Maintenance, Inc., 349 So.2d 494 (La.App. 4th Cir., 1977). Another floor mopping case in a public building where no warning signs or barricades were posted to protect the general public.
A case very similar to the facts herein is Gatti v. World Wide Health Studios, etc., 323 So.2d 819 (La.App. 2nd Cir., 1975). The accident in Gatti resulted from a slip and fall in a steam room of a spa. There, as here, the plaintiff could not show the existence of any foreign substance and the Second Circuit stated that a plaintiff seeking damages under Arts. 2315 and 2316 has the burden of proving fault and negligence on the part of the defendant. The court further stated that the plaintiff must prove defendant's conduct was substandard and that defendant violated some duty owed to plaintiff.
We feel it is obvious that a member of a spa, particularly a member who had made seven prior visits, is cognizant that the interior is going to be wet and slippery by the very nature of its facilities. We stated at the outset that we did not question *1015 plaintiff's fall from a step which was under water in the whirlpool which may have contributed to or aggravated a bad back condition. But we are constrained to agree with the District Court that plaintiff did not establish the presence of a foreign substance, or the existence of a slippery step, or that the defendant Spa failed to provide adequate maintenance.
Plaintiff's exhaustive and well presented evidence simply fails to establish negligence or a breach of duty by the defendant. Accordingly, the judgment of the District Court rendering a directed verdict in favor of the defendant is affirmed.
AFFIRMED.