BOUTALL, Judge.
This is a suit for damages against a third person contractor filed by a worker who sustained an injury while performing his job for another contractor. The trial judge determined that the plaintiff did not demonstrate any negligence on behalf of the defendant and that plaintiff was contribu-torily negligent, and accordingly he granted defendant’s motion for a directed verdict dismissing plaintiff’s suit. We affirm.
Calvin Preyan was installing some corrugated metal onto a boiler for Gulf Engineering at the Louisiana Power and Light facility at Taft, Louisiana, when some dust-like insulation material lodged into his eyes causing injuries. At issue on this appeal is the causation of the accident and the standard of proof applicable to rendition of a directed verdict.
Preyan’s account of the accident is that he was working with a co-worker, Clifford Watkins, installing some “laggets” (sheets of corrugated metal) on boiler number two of the Louisiana Power and Light facility, when they noticed that some workers for Cajun Insulation Company were unloading insulation material on the grating of the deck above them. He contends that some of the material was loose and spilled down into his eyes causing the injuries complained of. Preyan testified that he was unable to move to avoid the insulation because he was holding the sheet of metal in his hand and that the material fell too rapidly for him to shut his eyes to keep the material out. In addition to his own testimony, Preyan called as witnesses co-worker Clifford Watkins and a foreman for Cajun Insulation, Mike DeLotte. At the conclusion of the presentation of plaintiff’s evidence, the court rendered a directed verdict against him, giving an analysis of the testimony and other evidence in his reasons for judgment.
It is apparent from the judge’s remarks that the trial judge placed little credibility on the testimony of plaintiff and his coworker. Despite the fact that Preyan and his co-worker both testified that Preyan was lying on his back holding the piece of metal while the insulation was pouring into his face, Preyan on cross-examination admitted that he was not lying on his back but that he was down in a stooping position on his knees. Additionally, we note that although Preyan testified that he was wearing safety glasses, his co-worker testified that he was not. We further note that the co-worker was confronted with a prior contradictory statement made to an investigator in a telephone interview in which he stated that the insulation that got into Preyan’s eyes was as a result of their being engaged in removing some of the insulation where they were working. The witness did not deny having made such a statement, but could only say that he did not remember making such a statement. Our examination of the record supports the placing of little credibility on the testimony of plaintiff and his witness.
The worker of Cajun Insulation who was supposed to have unloaded the insulation material above plaintiff’s head was not called as a witness and only Cajun’s foreman, Mike DeLotte, was called. His testimony indicates that he was not present at all times in this area during that day, but he did testify that some insulation was be *1164 ing unloaded above. However he did not see, nor did any of his men tell him that plaintiff and his co-worker were working below, and there was no notice of any accident given him. Of equal importance he testified that when repairs were being made to a boiler such as this, that there was always considerable insulation dust in the air due to the disturbance of the old insulation by the various contractors and due to the deterioration of the insulation because of water leaks and weather elements. Although he admitted that unloading new insulation may probably cause dropage of some dust, he noted that it was more likely and more common that such dust was caused by removal or deterioration of old insulation.
The trial court concluded that there was insufficient evidence to show that Cajun’s employees caused the insulation fibers to get into plaintiff’s eyes, and based upon his disbelief of plaintiff’s testimony, we agree. Similarly, we agree with his finding that plaintiff could have at least shut his eyes and avoided the fibers and was negligent in not doing so. The scope of appellate review has been defined by the Supreme Court in the cases of Canter v. Koehring Co., 288 So.2d 716 (La.1973) and Arceneaux v. Dominque, 365 So.2d 1330 (1978). The record supports the conclusions of the trial judge.
The other issue on this appeal is the standard to be applied in considering the evidence on a directed verdict. We note that this case is a trial before the judge alone. We refer to the case of Sevin v. Shape Spa for Health and Beauty, Inc., 384 So.2d 1011 (La.App. 4th Cir. 1980). That case stands for the principle that when considering a motion for a directed verdict in a judge trial, the preponderance of the evidence standard applies under the provisions of LSA-C.C.P. Art. 1810(B). For the reasons expressed above, we conclude that the plaintiff has not carried the burden of proving his case by a preponderance of the evidence and the trial judge properly granted the motion for a directed verdict dismissing his suit.
The judgment appealed from is affirmed at appellant’s costs.
AFFIRMED.