738 So.2d 1153 (1999)
Montey E. THOMAS, Plaintiff-Appellant,
v.
SPORT CITY, INC., Scottsdale Ins. Co. and Cobra Equipment Co., Inc., Defendants-Appellees.
No. 31,994-CA.
Court of Appeal of Louisiana, Second Circuit.
June 16, 1999.
Rehearing Denied August 12, 1999.
McKeithen & Johnson by Anita D. McKeithen, Shreveport, Counsel for Appellant, Montey Thomas.
Davenport, Files & Kelly, L.L.P. by William G. Kelly, Jr., Monroe, Counsel for Appellees, Sport City & Scottsdale.
*1154 Mayer, Smith & Roberts, L.L.P. by John C. Turnage, Shreveport, Counsel for Appellee, Capps Welding.
Before BROWN, PEATROSS, and KOSTELKA, JJ.
BROWN, J.,
On March 17, 1992, plaintiffs ankle and foot were crushed while he was using a hack squat machine at the Sport City gym facility on Meriweather Road in Shreveport, Louisiana. The equipment had been purchased by Sport City from its manufacturer, Capps Welding, Inc. A bench trial in 1998 resulted in a judgment in favor of plaintiff awarding him general damages in the amount of $45,000 and special damages in the amount of $13,703.35. Comparative fault was assigned to the parties as follows: 30% to plaintiff; 35% to Sport City; and 35% to Capps Welding. Plaintiff has appealed and both Sport City and Capps Welding have answered the appeal. We reverse.

FACTS AND PROCEDURAL BACKGROUND
Plaintiff, Montey E. Thomas, who was 28 years old at the time of the accident, had been a member of the Sport City health club for several years. He usually worked out at least four times each week and used the hack squat machine as part of his normal exercise routine.
This leg exercise machine is designed to allow the user to complete a full squat. Its frame is at a 45 degree angle. A back rest or carriage with shoulder pads at the top moves along the frame on rollers. Weights can be attached to the carriage. At the bottom is a rectangular footplate. The user, with his back against the carriage and shoulders pushing against the pads, presses the weighted carriage up with his legs and then back down.
Plaintiff had placed 180 lbs. of free weights on the carriage and completed his set. To get out of the machine plaintiff had to place the carriage in the up position and move a lever which extended a hook on the carriage over a peg on the frame. While this occurs behind the user, the operator can see the lever and feel the weight being secured. Believing that the hook had been properly engaged, plaintiff stepped back off the angled foot plate. Thus, at least one foot was initially underneath the carriage. The hook, which had not in fact been properly engaged, but was apparently resting on top of the peg, slipped off and the rack fell, crushing plaintiffs foot and breaking his ankle.
Plaintiff filed suit against Sport City, Inc., its insurer, Scottsdale Insurance Company, and the manufacturer, Capps Welding, Inc.[1]

DISCUSSION

Liability of Capps Welding
On appeal, all parties take issue with the trial court's liability determinations. We will first address whether the trial court erred in finding that the hack squat machine manufactured by Capps Welding was defective in its design.
As noted by this court in Johnson v. Black & Decker U.S., Inc., 29,996 (La. App.2d Cir.10/31/97), 701 So.2d 1360, writ denied, 97-2971 (La.02/06/98), 709 So.2d 741, a claimant who alleges defect by design under La. R.S. 9:2800.56 must prove three elements. First, he must prove that another way to design the product existed at the time it was placed on the market. Next he must show that the alternative design was significantly less likely to cause the accident, or that the alternative design would have significantly reduced the damage. Thirdly, the claimant must prove that, at the time the product left the manufacturer's control, the likelihood that the product as designed would cause the claimant's damage and the gravity of that damage *1155 outweighed the burden on the manufacturer of adopting the alternative design identified by claimant and the adverse effect, if any, this different design would have on the product's utility. This is the risk-utility balancing test. Johnson, supra, citing Halphen v. Johns-Manville Sales Corp., 484 So.2d 110 (La.1986); and Kennedy, A Primer on the Louisiana Products Liability Act, 49 La. L.Rev. 565 (1989).
The determination of whether a defect is unreasonably dangerous is a question of fact. Hines v. Remington Arms Co., 94-0455 (La.12/08/94), 648 So.2d 331; Johnson, supra; Taylor v. American Laundry Machinery, Inc., 27,121 (La. App.2d Cir.06/23/95), 658 So.2d 288, writ denied, 95-1877 (La.11/03/95), 661 So.2d 1385. As noted by this court in Sawyer v. Niagara Machine & Tool Works, Inc., 535 So.2d 1057 (La.App. 2d Cir.1988), writ denied, 536 So.2d 1222 (La.1989), each case is resolved primarily on its own particular facts. Factual findings of a trial court will not be disturbed absent manifest error. Powell v. Regional Transit Authority, 96-0715 (La.06/18/97), 695 So.2d 1326; Rosell v. ESCO, 549 So.2d 840 (La.1989); Johnson, supra.
Whether the hack squat machine in this case was unreasonably dangerous in design requires an understanding of the purpose or goal of the machine. Serious bodybuilders want a hack squat rack that allows them to do a full squat as opposed to a half or parallel squat. In order to do so, the carriage is built to slide to within three inches of the foot plate.[2] Safety devices such as springs or rubber stops would have prevented this full extension.
The court qualified four experts in this case. Plaintiff's experts were Richard Rogers, director of the Shreveport-Bossier YMCA, who was tendered as an expert in the administration of and purchase of equipment for a physical fitness center; and Dr. Kyle Pierce, director and coach for the USA Weightlifting Development Center at LSUS, who was accepted as an expert in weightlifting, strength training and the equipment used in both. We note that neither Rogers nor Dr. Pierce was qualified to testify about the design of the hack squat machine involved in this litigation.
With that important caveat, Richard Rogers testified that persons who use hack squat machines can do the same exercise and work the same muscle group with free weights. Rogers noted that hazardous situations are created by the misuse of free weights or weight machines. According to Rogers, there is a risk of injury that is accepted by a person who engages in a squat exercise. This risk is reduced when a person uses good judgment and is not reckless.
When questioned about the hack squat machine upon which plaintiff was injured, Rogers admitted that if the hook is properly engaged, then the carriage will not fall. Rogers noted that the hack squat machine is designed so a user can squeeze the two handles together to determine whether the carriage is locked. Also, a person (like plaintiff) who had used the machine hundreds of times should have a "pretty good feel" for the equipment. Rogers further testified that it is the operator's responsibility to make sure that a machine is safely or properly secured. Finally, Rogers conceded that the hack squat machine is designed so that had it been properly operated by plaintiff, the accident would not have occurred.
Dr. Kyle Pierce noted that the utility of the hack squat machine made by Capps is that it allows a full squat. As did Rogers, Dr. Pierce testified that a weightlifter is ultimately responsible for his own safety. Dr. Pierce also stated that the hack squat machine is not defective and that the only problem he has with the machine is that it has no safety catch and goes all the way to *1156 the ground. As for the latching device, Dr. Pierce noted that properly activated, there would be a ¼ inch gap in the right hand grips and that improperly latched, the gap would be as large as two to three inches, something a user could feel as well as see. Dr. Pierce testified that a user should take care to make certain the hook is fully engaged. Specifically, had plaintiff correctly latched the hook, his accident would not have occurred.
Defendants tendered two experts in the design of exercise equipment. Ray Boudreaux, prior to becoming the president/owner of Cadex Systems, served for a number of years as president of Bodymaster Sports Industries. With both companies, he was involved in the design, manufacture and marketing of exercise equipment.
Boudreaux testified that the design of Bodymaster's hack squat machine is very similar to Capps' machine in the type of latching device used (two-handled grip lock) and that its carriage, which stops no more than three to four inches from the base, allows a user to perform a full squat. According to Boudreaux, a machine with a carriage that stopped further from the footplate would not allow users to perform a full squat and thus would not fulfill its intended purpose. Boudreaux stated that a hack squat machine built without a carriage that travels down to the base would not sell. Boudreaux reiterated that the utility of the hack squat machine is that it allows a user to perform a full squat.
According to Boudreaux, serious weight trainers or lifters want a machine which allows them to achieve a full contraction they can feel in both their quadriceps and gluteal muscles. This requires a hack squat machine which enables them to go beyond parallel, something the Bodymaster and Capps machines accommodate. Boudreaux noted that the latching or hooking mechanism of the hack squat machine involved in plaintiffs accident is very similar to that of the Bodymaster. The lever/handle device on both the Bodymaster and Capps machines is a safety mechanism which allows the operator to "feel" whether the machine is fully locked. While a user cannot see the hook, he can see the handles to determine whether the hook or latch is properly engaged. Furthermore, the Capps machine is very similar to hack squat machines made by other companies in the distance its carriage travels toward the foot plate. Boudreaux testified that he did not know of a hack squat machine made with a carriage which stopped closer than within four to six inches of the foot plate.
Next to testify was William "Buddy" Capps, the owner of Capps Welding, manufacturer of the hack squat machine upon which plaintiff was injured. Capps stated that his company is primarily concerned with the manufacture of free weight equipment and machines and that he personally has been involved in the design, manufacture and marketing of exercise equipment since the mid '70s.
Capps designed and began manufacturing the hack squat machine in 1981. Capps noted that the benefit of the hack squat machine is that it allows the user to do a full squat to work the quadriceps and gluteal muscles while having support for his back, which is provided by the carriage. This support is an advantage over squat exercises performed with free weights.
In discussing the specific design of his machine, Capps first noted that he incorporated a wider footplate to accommodate persons who wish to perform squats with a varying distance between their feet. Capps also related that he designed the carriage to be the length it is to allow all users to isolate their leg and butt muscles while having back support. Capps did not make the carriage shorter or design it to stop a further distance from the footplate because he wanted to meet the needs of users of varying heights and sizes. As noted by Boudreaux, people would not buy the hack squat machine if the carriage stopped more than a few inches from the footplate because they want to be able to *1157 go past parallel. For most people to be able to achieve a full squat, the carriage must travel to within an inch or so of the foot plate.
As a safety feature, Capps designed a locking mechanism with two levers because such a device makes it easy to determine whether the machine is locked. When the knobbed lever is pulled against the other lever, the lock is engaged and the hook catches over the peg. Capps noted that he utilized a simple mechanical lever which, absent user error, locks every time, thus eliminating any chance of failure, which is possible with a pressure or electronic lever. According to Capps, a user can easily tell whether the latching mechanism is properly activated just by looking at the lever handles or by feel. Capps emphasized that if properly locked, there is no way the carriage can fall.
Capps related that his design incorporated several safeguards: the dual-handled latching device described above and two sets of pegs to accommodate users of different heights and to allow operators to secure the weight bar if, because of fatigue, they are unable to raise the bar to their full height. Capps noted that his design is very similar to the hack squat machines made by Icarion, Rocky Mountain Gym Equipment and Bodymaster, all of which have carriages that travel all or most of the way down to the foot plate.
Under La. R.S. 9:2800.56, plaintiff has the burden of establishing that there was an alternative design that would allow a full squat and be capable of preventing his injury. Our review of the record leads us to conclude that plaintiff has not shown such an alternative design. Instead, the expert testimony established that the design in question is a safe design in reference to its purpose. This design is one used by other manufacturers of fitness and exercise equipment. Furthermore, the design suggested by plaintiff would have had an adverse effect on the product's utility. Thus, the trial court committed manifest error in finding the hack squat machine to be unreasonably dangerous.

Liability of Sport City
We will now address Sport City's contention that the trial court erred in finding negligence on its part for failing to instruct gym members in the use and dangers of its exercise equipment. Inherent in the trial court's finding of fault on the part of Sport City is its determination that defendant breached a duty owed to plaintiff and that this breach was a cause-in-fact and legal cause of plaintiff's injuries. Under a duty-risk analysis, all four inquiries must be affirmatively answered for plaintiff to recover. Mathieu v. Imperial Toy Corp., 94-0952 (La.11/30/94), 646 So.2d 318; Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289 (La. 1993).
As noted by this court in Thompson v. Hodge, 577 So.2d 1172 (La.App. 2d Cir.1991), members of health clubs are owed a duty of reasonable care to protect them from injury while on the premises. See also Gatti v. World Wide Health Studios of Lake Charles, Inc., 323 So.2d 819 (La.App. 2d Cir.1975); Sevin v. Shape Spa for Health and Beauty, Inc., 384 So.2d 1011 (La.App. 4th Cir.1980). This duty necessarily includes a general responsibility to ensure that their members know how to properly use gym equipment.
As found above, the hack squat machine was not defective or unreasonably dangerous. Furthermore, on the date of plaintiffs accident, the hack squat machine was not broken, but was in good condition and functioning as designed and intended.
Plaintiff was an experienced and sophisticated user of the health club's equipment, including the hack squat machine. Plaintiff, who was 28 years old when the incident occurred, testified that he began working out at the health club at age 13.[3] *1158 Plaintiff noted that he typically worked out with weights at least four times a week.
Ken Meeks, owner and manager of Sport City, testified that the hack squat machine has been in the health club since its purchase in 1984 without previous incident. Although at trial plaintiff stated that he had only been using the hack squat machine for four months before his accident, when impeached with his deposition testimony, he admitted that he had in fact been using the machine for years, hundreds if not thousands of times.
Plaintiff acknowledged that had he properly latched the hooking mechanism, the carriage would not have fallen. He further expressed his understanding that in order for the machine to be fully locked, the operator has to completely close the handle, i.e. pull the knobbed lever against the second lever so that there is a gap of only ¼ inch as opposed to a width of two to three inches. As did the other witnesses, plaintiff related that a user could easily feel or see the handles to determine whether the hook was fully engaged over the peg.
It is uncontested that Sport City had not instructed or supervised plaintiff in the use of the hack squat machine. This would normally be a breach of duty by Sport City as this machine could easily cause injury if not properly used. Plaintiff, however, testified that he knew how to use the machine and did not feel it was necessary for him to be shown how to use the hack squat machine. Plaintiff stated that he had seen others using the machine and that he was comfortable that he knew how to properly operate the equipment. He again conceded that the carriage would not have fallen had he properly latched the hook over the peg.
Under the particular facts and circumstances of this case, we find that Sport City's failure to warn or instruct plaintiff in the proper use of the hack squat machine was not a cause of plaintiff's accident and injury. It was known or understood by plaintiff, a sophisticated user of the exercise machine, that the hook had to be completely over the peg to lock the carriage and prevent it from falling. Therefore, instruction or warning would have served no purpose. The trial court clearly erred in finding Sport City at fault.

CONCLUSION
For the reasons expressed above, the judgment of the trial court is REVERSED and plaintiff's claims are dismissed with prejudice. Costs of this appeal are assessed to plaintiff.
APPLICATION FOR REHEARING
Before NORRIS, C.J., and BROWN, PEATROSS, KOSTELKA and DREW, JJ.
Rehearing denied.
NOTES
[1] Initially Cobra Equipment Company, Inc., was sued as the alleged manufacturer; however, upon learning that the equipment was made by Capps Welding, Inc., plaintiff amended his petition substituting Capps Welding as a defendant.
[2] This machine did have springs that stopped the rack from hitting the footplate so that the vinyl upholstery would not be torn; however, this was not enough room to prevent plaintiff's injury.
[3] The health club has undergone several name changes during the years through which plaintiff has maintained his membership at the Meriweather Road workout facility.