**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 99-30965

ELTON FITZGERALD ELLIS

Plaintiff - Appellee

VERSUS

WEASLER ENGINEERING INC; ET AL

Defendants

NUT HUSTLER INC

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana

July 11, 2001

Before SMITH and DENNIS, Circuit Judges, and HARMON,[*] District
Judge.

DENNIS, Circuit Judge:

In this diversity jurisdiction civil action based on Louisiana
products liability law, the manufacturer, Nut Hustler, Inc.,

---

[*]District Judge of the Southern District of Texas, sitting by
designation.

1

challenges the sufficiency of the evidence to support the jury's verdict in favor of the plaintiff, Elton Fitzgerald Ellis, on the single issue of whether Mr. Ellis's injury, the traumatic amputation of his arm, arose from a reasonably anticipated use of the product, a mechanized pecan harvester. Alternatively, Nut Hustler seeks reversal of the district court's denial of its motion for a new trial because of an alleged inconsistency between special verdicts. At the outset, we stress the limited nature of the principal issue on appeal: we are not here presented with a challenge to the jury's determination that Mr. Ellis's injury was proximately caused either by a characteristic of the product that rendered it unreasonably dangerous in design or by an inadequate or unprovided warning about the product's danger. Rather, we are to consider only whether the evidence presented at trial was sufficient to create an issue of fact for the jury as to the reasonably anticipated use element of Mr. Ellis's claim or whether the district court was required to enter a judgment as a matter of law against him on that issue. On the issues appealed we affirm the judgment on verdict of the district court.

## I. Facts and Procedural History

In the pecan-harvesting season of 1996-1997, the plaintiff, Elton Ellis, worked for Clarence Spotsville harvesting pecans on Mr. Spotsville's farm in Colfax, Louisiana. Mr. Ellis's job

2

entailed operating Mr. Spotsville's tractor and mechanized pecan picker.  Mr. Spotsville had purchased the pecan harvester machine from its manufacturer, the defendant Nut Hustler, Inc.

On the day of the accident, February 6, 1997, Mr. Spotsville picked up Mr. Ellis in his truck and bought each of them a can of beer on their way to the pecan orchard.  After drinking "two sips" or a can of beer,[2] Mr. Ellis started the tractor and set out to collect fallen pecans with the Nut Hustler machine attached to the tractor.  The harvester's pecan-picking function was powered by a spinning drive shaft attached to a power take-off on the tractor. As he was circling the first pecan tree, Mr. Ellis noticed that the harvester was not ejecting leaves, twigs, and debris as it should when properly harvesting pecans.  Mr. Ellis testified:

> It wasn't blowing out the leaves.  It was stopped up, so I did my normal routine, what I always do, that's the way I was taught, was to stop the tractor, leave the P.T.O. running and get off the tractor, walk back there and see what was not spinning back there on the spinner, see what was stopped up, what was causing it.

Thus, to identify the part of the harvester that was not working properly, Mr. Ellis left the tractor motor idling in neutral gear and the drive shaft spinning, so that he could see where the

---

[2]Mr. Ellis testified that before driving the tractor he had taken only two sips from the can of beer that Mr. Spotsville had purchased for him on the way to the pecan orchard.  Defense counsel asked Mr. Ellis if he had said in his deposition that he had drunk a whole can of beer before operating the tractor.  He did not flatly deny making the statement, but he insisted that he had only taken two sips and that somewhere in his deposition he had so testified.

mechanism was broken, stuck, or not properly functioning.

Mr. Ellis testified that both Mr. Spotsville and Mr. Valle, another pecan farmer for whom he had worked, taught him to follow this procedure to determine the nature of the problem when the harvester was not performing effectively. The plaintiff's expert witness, Mr. Mansel Mayeux, a retired Louisiana State University professor of agricultural engineering who had extensive experience in research, design, and safety of agricultural machinery, testified that Mr. Ellis had not engaged in an unexpected or improper use of the pecan harvester: "When you inspect a machine like that when you have a problem, you may have to leave it running in order to tell what the problem is. You turn it off and nothing is happening, so you don't know what's wrong, so you've got to leave it on."[3] The defendant's expert witness, Dr. Gerald Whitehouse, who had three degrees in mechanical engineering and specific expertise in mechanical design, testified that pecan harvesting was the reasonably anticipated use of the pecan harvester and that this was his understanding of what Mr. Ellis was doing at the time of the accident. Nut Hustler did not present any evidence that it reasonably should not have expected ordinary persons to troubleshoot a malfunctioning harvester in the field by

---

[3]Mr. Mayeux further testified that, "Once you've isolated what to repair, you turn it off and then do whatever it is you need to do." Mr. Ellis testified that he was not attempting to repair the harvester when the accident happened.

visually inspecting its moving parts while it was being operated by a power take-off from a stationary tractor.

Mr. Ellis walked around the pecan harvester and inspected its working parts, but he was not able to identify the cause of the malfunction. Because of the cold weather, Mr. Ellis was wearing a long flannel jacket over his trousers and undergarments. This was not unusual garb for pecan harvesting, as he testified without contradiction that Mr. Spotsville and Mr. Valle wore similar jackets in the field. As he headed back to the tractor, he noticed that a bolt on the front of the harvester was loose and dangling. (This was a different bolt from the one on the drive shaft involved in the accident.) He walked over and looked at the dangling bolt for a moment. Then he turned and walked toward the tractor again. Suddenly, the spinning drive shaft caught some part of his clothing and pulled him back into the machinery. Mr. Ellis testified:

> So I walked back there and I looked and I couldn't seem to find what the problem was, so I said, well, I'll go cut the machine off and come back and look again. So as I headed back to the tractor, I noticed that another bolt was loose. I heard it dangling. So I walked over and I looked over at it, and as I glanced and I turned around and I headed back to the tractor, that's when—I don't know. I don't know what happened to me. I just felt something grab me from the back, and as it grabbed me from the back, it made me lose my balance, you know, and it pulled me into it.

After the clothing covering Mr. Ellis's arm became tightly wrapped around the spinning drive shaft, his body was thrown away from the shaft, tearing off his arm at the shoulder.

5

Mr. Ellis filed this products liability suit against three defendants, including Nut Hustler. The district court dismissed the claims against all defendants except Nut Hustler. A jury trial was held on May 17-18, 1999. Nut Hustler moved for judgment as a matter of law at the close of the plaintiff's case and re-urged the motion upon completion of its case. The district court withheld ruling on the motion. The jury returned a verdict finding Nut Hustler 70% at fault and Mr. Spotsville 30% at fault. The jury found that Mr. Ellis was negligent in his use of the harvester but determined that his negligence was not a cause of the accident. The jury quantified damages in the amount of $730,000. Nut Hustler again moved for judgment as a matter of law on the issue of whether Mr. Ellis was engaged in a reasonably anticipated use of the harvester at the time of the accident. Nut Hustler also moved for a new trial on the issue of whether Mr. Ellis was guilty of negligence that was a cause of the accident. The district court denied the motions and rendered judgment for Mr. Ellis on the verdict. Nut Hustler appealed.

The district court's ruling on the post-trial motions succinctly describes the evidence from which it concluded that the jury reasonably found in favor of Mr. Ellis on the issues of reasonably anticipated use, unreasonably dangerousness in design and lack of adequate warning, and proximate causation of injury. The pertinent part of the district court's ruling provides:

In this case, there was sufficient evidence that Ellis used the pecan harvester for the exact purpose for which it was intended, gathering pecans. Further, there was testimony that Ellis was inspecting the machine when his shirt became twisted in the rotating machine. Such a use is consistent with the purpose of the product. See [Kampen v. American Isuzu Motors, Inc., 157 F.3d 306, 309 (5th Cir. 1998)(en banc)]. The defendant argues that the placement of a large bolt on the drive shaft was an unreasonable and unanticipated use of the pecan harvester. Consideration of the placement of the bolt is more appropriate when analyzing the issue of alteration and modification of the product.

The unreasonably dangerous question encompasses the reasonably anticipated alteration or modification issue. See 9:2800.54(C)(1997). That is the issue before this court: whether there is legally sufficient evidentiary basis for a reasonable jury to find that the modifications made to the machine could be reasonably anticipated by the defendant.

. . . From the evidence presented, the jury could have found that the pecan harvester was unreasonably dangerous when it left the Nut Hustler's control. Basil Savage, the majority shareholder in Nut Hustler,[4] testified that he had developed a shield for the drive shaft in the early 1980's. He placed this shield on the pecan harvester of his other company, Savage Equipment Company. He discussed the need for the shield with Jimmy Goforth, another shareholder of Nut Hustler and manager of the company, but Goforth would not place the shield on the Nut Hustler equipment. Savage admitted that a guard could have been manufactured and installed at a reasonable cost and would provide protection for an operator. In addition, Savage testified that [the designer] sent Nut Hustler a blueprint of the pecan harvester in 1978 that warned them that the drive shaft had no shield and such a shield should be provided by the implement manufacturer, Nut Hustler.

Mansel Mayeux, plaintiff's expert in agricultural

---

[4]Footnote 2 in the district court's ruling at this point states: "Savage testified that he and Jimmy Goforth incorporated Nut Hustler in 1978. Goforth and Savage were also major shareholders of Savage Equipment Company. Mr. Savage operated Savage Equipment Company while Mr. Goforth managed Nut Hustler. At some time in the late 1980's Mr. Savage acquired 100% ownership of both companies."

engineering, testified that in March 1987 the American Society of Agricultural Engineers, the Society of Automotive Engineers, and the American National Standards Institute generated standards that required a shield to cover any protruding object on a drive shaft.[5] See Basil Savage's testimony.  The standard was issued prior to the production of the equipment involved in this case. Savage testified that he knew that standards existed but had no knowledge of the requirements of the standards. In addition, Mayeux estimated the cost of such a shield to be $20-50.

Mayeux also opined that the unshielded drive shaft would be dangerous absent any protruding objects. Further, he stated that the two nut projection designed by Nut Hustler was unreasonably dangerous if unprotected by a shield.  In this case, the jury could have found that the pecan harvester was unreasonably dangerous in design and that the addition of the large bolt was not unreasonable or unforeseeable.[6]  There was sufficient evidence that both the lack of the shield and the addition by the owner of a large bolt contributed to Ellis' injury.  Nonetheless, the culprit, according to believable testimony, is the lack of a protective shield. There is ample evidence that without a shield, the accident would have occurred with or without the presence of the awkward bolt added by the owner.  This is supported in the jury's finding of Mr. Spotsville as being 30% at fault.[7]  For these reasons, the defendant's motion for a new trial or for a judgment as a matter of law is denied.

---

[5] Footnote 3 of the district court's ruling at this point observes that "[a]lthough such a standard is not determinate of Nut Hustler's liability, it is relevant to the jury's determination. See Dunne v. Wal-Mart Stores, Inc., 679 So.2d 1034 (La. App. 1st Cir. 1996)."

[6] Footnote 4 of the district court's ruling here states that "[f]rom the evidence, the jury could have concluded, in the alternative, that the large bolt was not a cause of the accident and that Spotsville was negligent in other respects."

[7] Footnote 5 of the district court's ruling notes that "the above analysis applies similarly to the inadequate warning claim."

II. Judgment as a Matter of Law

A. Louisiana Products Liability Act

The Louisiana Products Liability Act (LPLA), La. Rev. Stat. § 9:2800.51 et seq., provides that the manufacturer of a product is liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity. Id. § 9:2800.54. Under the LPLA, a product is unreasonably dangerous if, inter alia, the product is unreasonably dangerous in design as provided in § 9:2800.56 or the product is unreasonably dangerous because an adequate warning about the product has not been given as provided in § 9:2800.57. LPLA § 9:2800.54(B)(2), & (3). The term "reasonably anticipated use" means a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances. Id. § 9:2800.53(7).

The claimant has the burden of proving the elements of reasonably anticipated use, unreasonable dangerousness in design or lack of adequate warning, and proximate causation. Id., § 2800.54(D). Thus, Mr. Ellis had the burden of producing evidence and persuading the jury to find by a preponderance of the evidence the facts that his injury arose from a reasonably anticipated use of the product, and that his damage was proximately caused by a

9

characteristic of the product that rendered it unreasonably dangerous in design or by the lack of an adequate warning. The existence of each of these elements is a question of fact or of mixed fact and policy to be decided by the jury based upon the evidence and circumstances presented by the particular case.[8] The factual findings of the existence or non-existence of each of these elements is subject to appellate review in Louisiana under the

---

[8]See Hooker v. Super Prods. Corp., 98-1107 (La. App. 5 Cir. 6/30/99), 751 So. 2d 889, 904-05 (plaintiff met initial burden of proof on reasonably anticipated use in jury trial); Dunne v. Wal-Mart Stores, Inc., 95-2047 (La. App. 1 Cir. 9/10/96), 679 So. 2d 1034, 1036-37 (trial court's finding that use of product was not reasonably anticipated was manifestly erroneous; contrary de novo finding by appellate court); Bernard v. Ferrellgas, Inc., 96-621 (La. App. 3 Cir. 2/5/97), 689 So. 2d 554, 559 (reasonable jurors could find lack of safety device was a significant causal factor); Perez v. Brown Mfg., 1999 WL 527734, *4 (E.D. La.) (unreasonably dangerous in design); Hines v. Remington Arms Co., 648 So. 2d 331, 335 (La. 1994)(same); Precht v. Case Corp., 99-1296 (La. App. 3 Cir. 2/16/00), 756 So. 2d 488, 495, 497-498 (same); Guillory v. Int'l Harvester Co., Inc., 99-593 (La. App. 3 Cir. 10/13/99), 745 So.2d 733, 736, writ denied 99-3237 (La. 1/14/00), 753 So. 2d 220 (same); Thomas v. Sport City, Inc., 31-994 (La. App. 2 Cir. 6/16/99), 738 So.2d 1153, 1155 (same); Johnson v. Black & Decker U.S., Inc., 29-996 (La. App. 2 Cir. 10/31/97), 701 So. 2d 1360, 1363, writ denied, 97-2971 (La. 2/6/98), 709 So. 2d 741 (same); Morehead v. Ford Motor Co., 29-399 (La. App. 2 Cir. 5/21/97), 694 So. 2d 650, 654, reh'g denied, writ denied 97-1865 (La. 11/7/97), 703 So. 2d 1265 (same); Bernard, 689 So. 2d 554, 559 (same); Ballam v. Seibels Bruce Ins. Co., 97-1444 (La.App. 4 Cir. 4/1/98), 712 So.2d 543, 549 (unreasonably dangerous for failure to provide an adequate warning); Coulon v. Wal-Mart Stores, Inc., 98-1141 (La. App. 1 Cir. 5/14/99), 734 So. 2d 916, 920 & 921 (unreasonably dangerous in composition or construction). Cf. Reed v. Wal-Mart Stores, Inc., 708 So. 2d 362, 364 (La. 1998)("whether a defect presents an unreasonable risk of harm 'is a disputed issue of mixed fact and law or policy that is peculiarly a question for the jury or trier of the facts.'")(quoting Tillman v. Johnson, 612 So. 2d 70 (La. 1993)).

10

manifest error standard.[9]

### B. Distinguishing Between Decisions on Law and Facts in Louisiana Cases

Under the Louisiana state constitution, the general rule as to the scope of appellate review in civil cases is that the jurisdiction of the supreme court and the courts of appeal extend to questions of fact as well as to questions of law. La. Const. Art. V §§ 5(C) & 10(B). Jurisdiction to review findings of facts, resulting from Louisiana's history as a hybrid civil and common law jurisdiction, has been interpreted as giving the supreme court and courts of appeal the power to decide factual issues de novo. See, e.g., Rosell v. Esco, 549 So. 2d 840, 844 n.2 (La. 1989).[10] The exercise of this power is limited by the jurisprudential rule of practice that the factual finding by a trial judge or jury will not be upset unless it is manifestly erroneous or clearly wrong. Id. When an appellate court finds that a reversible error of law was

---

[9]Precht, 756 So. 2d at 495; Thomas, 738 So. 2d at 1155; Coulon, 734 So.2d at 920 (citing Reed, 708 So. 2d at 364-65; Ballam, 712 So. 2d at 549. Cf. Reed, 708 So.2d at 365 ("[T]he findings of the jury or trial court should be afforded deference and we therefore hold that the ultimate determination of unreasonable risk of harm is subject to review under the manifest error standard. A reviewing court may only disturb the lower court's holding upon a finding that the trier of fact was clearly wrong or manifestly erroneous.").

[10]See also Melancon v. McKeithen, 345 F. Supp. 1025, 1029 (E.D. La. 1972)(Wisdom, J. for three-judge court)(citing Abat v. Doliolle, 4 Mar.(O.S.) 136 (1816)); accord Powell v. Reg'l Transit Auth., 695 So. 2d 1326, 1328 (La. 1997); Andrews v. Williams, 281 So. 2d 120, 121 (La. 1973).

made in the trial court or a manifest error of material fact was made by the trial court or jury, however, the reviewing court is required to redetermine the facts de novo from the entire record and render a judgment on the merits.  Id. (citing Gonzales v. Xerox Corp., 320 So. 2d 163 (La. 1975); McLean v. Hunter, 495 So. 2d 1298 (La. 1986); Otto v. State Farm Mut. Ins. Co., 455 So. 2d 1175 (La. 1984); Ragas v. Argonaut Southwest Ins. Co., 388 So. 2d 707 (La. 1980)).  The manifest error doctrine also makes it possible for different triers of fact to validly reach different conclusions concerning the same set of facts. See Knighten v. Am. Auto. Ins. Co., 121 So. 2d 344, 349 (La. Ct. App. 1st Cir. 1960)

> "[C]onflicting decisions upon the same issue of fact do not necessarily connote erroneous judicial action. Differences in proof and the latitude necessarily allowed to the trier of fact in each case to weigh and draw inferences from evidence and to pass upon the credibility of witnesses, might lead an appellate court to conclude that in none is the judgment erroneous."

Id. (quoting Worcester County Trust Co. v. Riley, 302 U.S. 292, 299 (1937))(discussing how the court reached a different result from that in Johnson v. Wilson, 97 So. 2d 674, 679 (La. 1957), rev'd on other grounds, 118 So. 2d 450 (La. 1960), when the basic facts in the two cases were the same).  See also State, Dep't of Highways v. Martin, 215 So. 2d 142, 143 (La.Ct.App. 3rd Cir. 1968); Wright v. Paramount-Richards Theatres, 198 F. 2d 303, 308 (5th Cir. 1952).

Unlike the Seventh Amendment to the United States Constitution, the Louisiana Constitution contains no guarantee, in

civil cases, of a right to trial by jury and no restriction upon appellate reexamination of facts tried by a jury.  As this court observed in Wright, 198 F.2d at 306, "As a consequence of [the appellate review of facts in Louisiana], in civil jury cases federal courts evaluating decisions of Louisiana state courts as precedents have the difficult task of separating the decisions of the Louisiana courts on the law from their review of the facts." (emphasis added).  Accord Miskell v. S. Seafood Co., 439 F.2d 790, 792 (5th Cir. 1971); see also Shirey v. Louisville & Nashville R.Co., 327 F.2d 549, 552 (5th Cir. 1964); Great Am. Indem. Co. v. Inkenbrandt, 306 F.2d 117, 119 (5th Cir. 1962); St. Paul Fire & Marine Insurance Company v. Heath, 302 F.2d 326, 328 (5th Cir. 1962); Gov't Employees Ins. Co. v. Davis, 266 F.2d 760, 764 (5th Cir. 1959); LaBuff v. Texas & New Orleans R.R. Co., 126 F.Supp. 759, 763 (W.D. La. 1954); Boeing Co. v. Shipman, 411 F.2d 365, 379 n.4 (5th Cir. 1969)(en banc)(Rives, J., concurring), overruled on other grounds by Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331, 337 & 339 (5th Cir. 1997); William E. Crawford, Life on a Federal Island in the Civilian Sea, 15 MSCLR 1, 7-8 (1994).

Thus, in diversity cases, a federal court or jury can be bound by a Louisiana court's creation or interpretation of state law but not by a state court's finding or decision on the facts of a particular case.  Wright, 198 F.2d at 308.  Indeed, it is an error of law for a federal district court in a diversity case to

13

base its ruling on a motion for judgment as a matter of law (or, formerly, on a judgment notwithstanding the verdict) on the findings of Louisiana courts on facts as distinguished from their decisions on law.  Id. at 307-08.[11]

Accordingly, in evaluating the Louisiana decisions cited by Nut Hustler in support of its motion for judgment as a matter of law, we must first determine whether the state decisions upon which it relies make or interpret state law on point.  After carefully studying those Louisiana cases, we conclude that none of them do so.  Rather, each decision relied upon by Nut Hustler constitutes only a finding of an adjudicative fact[12] specific to that particular case, viz., whether the claimant's damage in that particular case

---

[11]In a federal civil jury case, "[i]t is the jury, not the [federal or state] court, which is the fact-finding body." Wright, 198 F.2d at 307-308 (quoting Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35 (1944)).  Moreover, "[t]hat conclusion [is true] whether it relates to negligence, causation or any other factual matter[.]" Id. at 308 (quoting Tennant, 321 U.S. at 35).

[12]See Fed. R. of Evid. 201 advisory committee notes ("Adjudicative facts are simply the facts of the particular case. Legislative facts, on the other hand, are those which have relevance to legal reasoning and the lawmaking process, whether in the formulation of a legal principle or ruling by a judge or court or in the enactment of a legislative body."); Black's Law Dictionary (7th ed. 1999)("**adjudicative fact** . . . A controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties. . . . For example, adjudicative facts include those that the jury weighs."); id. at 610-11 ("**legislative fact**. A fact that explains a particular law's rationality and that helps a court or agency determine the law's content and application. . . . Legislative facts are not ordinarily specific to the parties in a proceeding.")

14

arose from a reasonably expected use of the specific product. Because each of the Louisiana decisions relied upon by Nut Hustler with respect to the issue of reasonably anticipated use is a decision making a finding of fact, rather than a decision making or interpreting law, the jury, the district court, and this court are not bound in this diversity case by those state cases on their findings of facts with respect to the issue of reasonably anticipated use.

Actually, Nut Hustler does not contend that the Louisiana cases it cites make or interpret state law with respect to the reasonably expected use of a product. Nut Hustler argues instead that we must grant its motion for judgment as a matter of law because in a number of cases Louisiana courts have found that a claimant's injury did not arise from a reasonably expected use of a product based on facts that were "closely analogous" or "strikingly similar to the present circumstances." That argument is based on a faulty notion of binding factual precedents, however, which is contrary to the well-settled jurisprudence of this circuit that in diversity cases we are bound by Louisiana courts' decisions making or interpreting state law but not by their findings of facts in particular cases. See Wright, 198 F.2d at 307-08; Miskell, 439 F.2d at 791; Shirey, 327 F.2d at 552 (5th Cir. 1964); Inkenbrandt, 306 F.2d at 119; St. Paul Fire & Marine Ins. Co., 302 F.2d at 328; Davis, 266 F.2d at 764; LaBuff, 126 F.Supp. at 763; Boeing, 411

15

F.2d at 379 n.4 (Rives, J., concurring).

That the Louisiana cases cited by Nut Hustler represent only findings of facts in particular cases with respect to reasonably expected use of a product, not the making or interpreting of law on that issue, is evident from a brief survey of them. (Also evident is the questionableness of Nut Hustler's contention that the Louisiana decisions it cites are "closely analogous" or "strikingly similar" to the present case on the facts. The Louisiana cases involve a wide array of dissimilar products and uses, and none of them involves the use of a pecan harvester. We pretermit discussion of the factual analogies or contrasts between those decisions and the case at bar, however. They are not relevant to our decision, because we are not bound by the state courts' findings of facts in our review of this federal diversity civil jury trial.)

In Myers v. American Seating Co., 93-1350 (La. App. 1 Cir. 5/20/94), 637 So. 2d 771, relied upon heavily by Nut Hustler, the court of appeal reversed a directed verdict for the manufacturer on the issues of the "unreasonable dangerousness" and "reasonably anticipated use" of a folding chair because "based on the evidence presented to the jury, reasonable people could have reached a different conclusion." Id. at 778. After conducting a trial de novo on the record, the court of appeal found that the plaintiff's use of the folding chair as a step ladder by standing on the rear

part of the chair's seat was not a reasonably anticipated use of the chair and that the product was not unreasonably dangerous in design or otherwise. This case illustrates that the Louisiana courts regard the question of whether a particular use of a product was reasonably anticipated as a question of fact for the jury when reasonable people could disagree as to the answer; and that if the trial judge errs in not sending the issue to the jury, the court of appeal will decide that question of fact as the trier of the facts in a trial de novo on the entire record. Thus, the court of appeal in <u>Myers</u> made a finding of fact, and did not make or interpret state law, on the issue of reasonably expected use of a product.

In <u>Kelley v. Hanover Ins.</u>, 98-506 (La. App. 5 Cir. 11/25/98), 722 So. 2d 1133, 1137, a teenage boy died as the result of his intentional inhalation of propane gas to get high. The appellate court upheld summary judgment for the defendant manufacturers on the issue of whether intentional inhalation was a reasonably anticipated use of the product because the evidentiary basis in that case was not sufficient to support a reasonable trier of fact's finding to the contrary. Again, this case does not establish a rule of law or change the LPLA's legal definition of reasonably anticipated use; it merely decides that based on the summary judgment evidence presented in that particular case a reasonable trier of fact could not have found for the claimant on that issue.

In Ford v. Beam Radiator, Inc., 96-2787 (La. App. 1 Cir. 2/20/98), 708 So. 2d 1158, 1162, a radiator cap's cast-iron "boss" was welded to the stainless steel stud after it was sold, eliminating the taper lock feature. The appellate court upheld the jury's factual finding for the defendant manufacturer on the issue of reasonably anticipated use because "the record provided a reasonable basis for the jury to conclude that the improper modification by welding was not a misuse that could be reasonably anticipated." Id. Again, Nut Hustler does not and cannot point to any law established or interpreted by the decision but mistakenly claims that we are bound by its case-specific factual finding.

In Johnson v. Black & Decker U.S., Inc., 29-996 (La. App. 2 Cir. 10/31/97), 701 So. 2d 1360, 1365, after reviewing the record, the appellate court affirmed the jury's factual finding that the plaintiff's use of a power miter saw without the safety guard, which was attached at the time of the sale, should not have been reasonably anticipated by the defendant manufacturer. Far from being a creation of law or a gloss on the LPLA, this was simply an appellate determination that the jury's finding of fact was not unreasonable; the appeals court did not address whether a contrary finding also would have been reasonable based on that particular evidentiary record. In other words, the appellate court made no law because it merely reviewed the jury's findings of fact for manifest error and, finding none, affirmed.

18

In <u>Hoyt v. Wood/Chuck Chipper Corp.</u>, 92-1498 (La. App. 1 Cir. 1/6/95), 651 So. 2d 1344, 1352, the appellate court, upon its own review of the record, made a finding of fact de novo that the manufacturer should not have reasonably expected the replacement of the key-activated starter switch on a woodchipper with a less safe flip-on toggle switch.  Moreover, <u>Peterson v. G.H. Bass and Co., Inc.</u>, 97-2843 (La. App. 4 Cir. 5/20/98), 713 So. 2d 806, affirmed a summary judgment that, on the particular evidentiary basis in that case, in which the plaintiffs presented no evidence to the contrary, the manufacturer reasonably should not have expected teenage girls to intentionally inhale vapors from products expressly designed and labeled for the care of shoes.[13]

The foregoing analysis of the Louisiana court decisions and

---

[13]The federal cases cited by Nut Hustler applying the LPLA are to the same effect. They involved either a summary judgment or a judgment as a matter of law that there was not a legally sufficient evidentiary basis in that particular case for a reasonable juror or trier of  fact to find for the plaintiff on the issue of reasonably anticipated use.  <u>See</u> <u>Hunter v. Knoll Rig & Equip. Mfg. Co., Ltd.</u>, 70 F.3d 803 (5th Cir. 1995)(racking pipe with a negative lean was not reasonably anticipated use of drilling rig racking board because it was commonly known to be dangerous and contrary to industry practice); <u>London v. MAC</u>, 44 F.3d 316 (5th Cir. 1995)(climbing atop a ten-foot high gearbox and standing on its cover while attempting to dislodge clogged material from a shredder was not a reasonably anticipated use of the gear box cover); <u>Lockhart v. Kobe Steel Ltd. Const. Mach. Div.</u>, 989 F.2d 864 (5th Cir. 1993)(suspension of a heavy pontoon from a chain looped around the teeth of an excavator bucket designed for scooping, not lifting, was not a reasonably anticipated use of excavator and bucket); <u>Frith v. John Deere Co.</u>, 955 F.Supp. 663 (W.D. La. 1996)(purposeful deactivation of safety switch that prevented the starting of a tractor while in gear so as to allow the very type of hazard protected against was not a reasonably anticipated use).

the federal Louisiana diversity decisions relied upon by Nut Hustler demonstrates that each case presents only a finding of fact on the issue of reasonably anticipated use with respect to the evidentiary basis of that particular case.  None of those cases represents a creation or interpretation of Louisiana law with respect to reasonably anticipated use.  Consequently, Nut Hustler's sample of Louisiana cases presents no decision on state law that is binding on the jury, the district court, or this court in the present diversity case with respect to the reasonably anticipated use issue.[14]

## C. Sufficiency of Evidence and Judgment
## As a Matter of Law in Federal Diversity Cases

"We review de novo the district court's ruling on a motion for judgment as a matter of law, applying the same legal standard as the trial court."  Flowers v. S. Reg'l. Physician Servs., No. 99-31354, 2001 WL 314603, at *4 (5th Cir.(La. 2001)) (citing Ford v. Cimarron Ins. Co., 230 F.3d 828, 830 (5th Cir. 2000); Brown v. Bryan

---

[14]It is interesting that Nut Hustler did not include within its case sample a number of Louisiana decisions favorable to claimants on the issue of reasonably anticipated use.  See, e.g., Simon v. Am. Crescent Elevator Co., 99-2058 (La. App. 4 Cir. 4/26/00), 767 So. 2d 64; Hooker, 751 So. 2d 889; Dunne, 679 So. 2d 1034; State Farm Mut. Auto. Ins. Co. v. Wrap-On Co., Inc., 626 So. 2d 874 (La. Ct. App. 3rd Cir. 1993).  Nut Hustler does not explain why those cases were excluded or how, if at all, their inclusion would have affected the analogy it evidently claims should be drawn from a synthesis of Louisiana cases, each involving a decision of a question of fact of reasonably anticipated use based on the specific, unique evidentiary record of that particular case.

County, Oklahoma, 219 F.3d 450, 456 (5th Cir. 2000), <u>cert. denied</u>, 121 S.Ct. 1734 (2001)).

Whether the evidence presented at trial is sufficient to create an issue of fact for the jury or will permit the court to enter judgment as a matter of law is governed by federal rather than state law. <u>Thrash v. State Farm Fire & Cas. Co.</u>, 992 F.2d 1354 (5th Cir. 1993); <u>Boeing Co. v. Shipman</u>, 411 F.2d 365 (5th Cir. 1969)(en banc), <u>overruled on other grounds</u> by <u>Gautreaux v. Scurlock Marine, Inc.</u>, 107 F.3d 331, 337 & 339 (5th Cir. 1997). This is the majority rule of the federal circuits. 9A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2525 (2d ed. 1994)("WRIGHT & MILLER"); <u>id.</u> at 118 (Supp. 2001); 9 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 50.66 (3d ed. 1999). Moreover, "[c]oncerning matters covered by the Federal Rules of Civil Procedure, . . . [i]t is settled that if the Rule on point is consonant with the Rules Enabling Act, 28 U.S.C. § 2072, and the Constitution, the Federal Rule applies regardless of contrary state law." <u>Gasperini v. Ctr. For Humanities, Inc.</u>, 518 U.S. 415, 428 n.7 (1996)(citing <u>Hanna v. Plumer</u>, 380 U.S. 460, 469-74 (1965); <u>Burlington No. R. Co. v. Woods</u>, 480 U.S. 1, 4-5 (1987)). <u>See also</u> <u>Rosales v. Honda Motor Co., Ltd.</u>, 726 F.2d 259 (5th Cir. 1984); <u>Affholder, Inc. v. So. Rock, Inc.</u>, 746 F.2d 305 (5th Cir. 1984). In the absence of Nut Hustler's demonstration of the invalidity of Federal Rule of Civil Procedure 50, and our own inability to detect any, we conclude that

Rule 50 clearly applies to the present case for purposes of determining whether a judgment as a matter of law should be granted.  Id.

Under Rule 50, a court may not render judgment as a matter of law unless a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.  Fed. R. Civ. P. 50(a); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 149 (2000).  In entertaining a Rule 50 motion for judgment as a matter of law the court must review all of the evidence in the record, draw all reasonable inferences in favor of the nonmoving party, and may not make credibility determinations or weigh the evidence.  Id. at 150 (citing Lytle v. Household Mfg., Inc., 494 U.S. 545, 554-55 (1990); cf. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51, 254 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"  Reeves, 530 U.S. at 150-51 (quoting Liberty Lobby, 477 U.S. at 255).  Although the court must review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.  Id. at 151 (citing 9A WRIGHT & MILLER § 2529).  Thus, the court must give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party

22

that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." Id. (quoting WRIGHT & MILLER § 2529).

> D. There Was a Legally Sufficient Evidentiary Basis For A Reasonable Jury to Find for Mr. Ellis on the Issue of Reasonably Anticipated Use; The District Court Correctly Denied Nut Hustler's Motion for Judgment as a Matter of Law.

In denying Nut Hustler's motion for a judgment as a matter of law, the district court stated:

> In this case, there was sufficient evidence that Ellis used the pecan harvester for the exact purpose for which it was intended, gathering pecans. Further, there was testimony that Ellis was inspecting the machine when his shirt became twisted in the rotating machine. Such a use is consistent with the purpose of the product.

(citing Kampen v. Am. Isuzu Motors, Inc., 157 F.3d 306, 309 (5th Cir. 1998)(enbanc)(The LPLA's "objective inquiry requires us to ascertain what uses of its product the manufacturer should have reasonably expected at the time of manufacture.")).[15] After

---

[15]This court in Kampen expressed its view that the term "reasonably anticipated use" may reasonably be interpreted at some level of generality:

> [A] plaintiff may act in relation to a product in such a way that, while it does not change the physical stresses placed on a product, nevertheless increases the risk of injury associated with the product. A manufacturer is required to take these kinds of actions by product users into account when designing and providing warnings for its product. Surely the manufacturer, Isuzu, was required to contemplate not only the risks associated with the proper physical manipulation of the jack, but also the risks associated with the purpose for which the jack would be employed

reviewing the record, we conclude that the district court correctly

analyzed the evidence and applied Rule 50, not simply for the

district court's stated reasons, but also because of additional

evidence in the record from which the jury reasonably could have

> (i.e., whether the jack would be used for changing tires or instead as a support for repairs to the car's undercarriage).
>
> Certainly lines must be drawn between those actions of a plaintiff which will and will not constitute "use" of a product:  we would not say, for example, that the brand of shirt Kampen was wearing when he was crawling under the car should figure into his "use" of the jack. Isuzu was not required to anticipate whether potential users of its jack would be wearing Polo, Izod or J.C. Penney sportswear because those aspects of Kampen's behavior have nothing to do with the risks contemplated in designing a jack.  But whether or not Kampen was going to jack the car up and then crawl under it bears directly on the decisions Isuzu must make in designing a product that is not unreasonably dangerous.
>
> We thus define Kampen's "use" of the jack at a level of generality that will take into account the risks Isuzu must (or should) have reasonably contemplated when designing the jack and providing warnings for its use. Kampen began using the jack when he elevated the car with it.  When Kampen finished jacking the car up, however, his use of the jack did not conclude. Thereafter, Kampen used the jack by relying on the jack to hold the car in its elevated position.   When Kampen placed himself beneath the car, he was still using the jack:  he was relying on the jack to hold the car above his body. There is no requirement in the LPLA that "use" necessarily involve a physical touching of the product. "Handling" does indeed seem to suggest some physical contact with the product, but we observe that "reasonably anticipated use" is defined in terms of a "use or handling" of the product.  <u>See</u> La.Rev.Stat.Ann.  S 9:2800.53(7)(emphasis added).  The disjunctive implies that "use" need not always involve the physical manipulation of the product.

157 F.3d at 311-12.

24

found that Nut Hustler should have reasonably expected or actually did expect that an ordinary person operating the pecan harvester would inspect the harvester or walk between the tractor and the harvester while the harvester machinery was running.

For example, Mr. Ellis testified that in inspecting the malfunctioning pecan harvester he followed the procedure that he had been taught by two experienced pecan farmers. He was instructed to leave the tractor motor running in neutral gear, with the drive shaft engaged to the power take-off, while he inspected the harvester. The purpose of leaving the harvester operational during the inspection was to distinguish working from non-working parts, so as to facilitate identification of the part of the harvester that was broken, stuck, or otherwise impaired. The plaintiff's expert in agricultural machinery also testified that this was the normal procedure for detecting the trouble with such machinery in the field. He said that many problems could not be detected unless the machine was activated. The jury reasonably could have inferred that it would not have been practicable or reasonably expected for a farm worker to haul the harvester to the shop each time it malfunctioned without first performing a field inspection. Further, the jury reasonably could have found that the manufacturer's own expert agreed that Mr. Ellis's use of the harvester during his inspection of it was a reasonably anticipated use.

The jury also could have reasonably drawn the inference that Nut Hustler actually anticipated or should have expected that the harvester's users would leave it running while inspecting it for problems because Nut Hustler presented no evidence to the contrary. Nut Hustler did not ask any of its witnesses, which included its owners, officers, and farm machinery expert, whether the type of operational field inspection conducted by Ellis was a use of the product that the manufacturer should reasonably expect of an ordinary person in the same or similar circumstances. Finally, the jury reasonably could have inferred that Mr. Savage and Mr. Goforth, Nut Hustler's owners and operators, actually anticipated or reasonably should have expected farm hands to walk near the tractor and the harvester while these machines were operating in idling mode for inspections for the following reasons: The designer of the machinery had given them notice on the design drawings that they used in manufacturing the harvesters that a shield should be placed over the drive shaft at the point where Mr. Ellis was pulled into it; Mr. Savage placed such a shield on all harvesters made in the Oklahoma plant; Mr. Savage told Mr. Goforth that he should place such shields on the harvesters manufactured in the Texas facility; and Mr. Savage and Mr. Goforth attached similar shields in many places on the Nut Hustler harvesters other than on the drive shaft to prevent farm workers from being injured by moving parts. Also, Mr. Mayeaux testified that at the time of Nut

26

Hustler's manufacture of the pecan harvester the American Society of Agricultural Engineers, the Society of Automotive Engineers, and the American National Standards Institute had generated standards that required a shield to cover any protruding object on a drive shaft.

Nut Hustler's principal argument on appeal appears to be that Mr. Ellis's "leaving the machinery fully operational while he walked around the harvester with loose-fitting clothing to look for a possible malfunction" was a "use" but not a "reasonably anticipated use" of the product.[16] In its main argument, however, Nut Hustler does not directly address the evidence in attempting to explain why a reasonable jury could not have found for Mr. Ellis on that issue. Instead, Nut Hustler presents an argument based on a complex inexplicit analogy drawn from a detailed survey of

---

[16]Nut Hustler's brief is ambivalent, however. Within the space of a single page, page 12, it concedes that "plaintiff's 'use' of the pecan harvester was not simply its deployment during the actual harvesting of pecans," but also included his inspection of the harvester as described above. Next, Nut Hustler appears to concede that "[b]ased on the reasoning in Kampen, the 'reasonably anticipated use' of the machinery included plaintiff's behavior **subsequent** to the intitial stages of pecan-harvesting, when he chose to trouble-shoot the machinery in its fully-operational state[.]" (italics and bold in original). Finally, however, Nut Hustler states that the "legal question is whether such a use can be considered to be 'reasonably anticipated use' under the LPLA." Because Nut Hustler's brief as a whole does not evince an intention to concede the reasonably anticipated use issue, we believe its second statement partially quoted above is either a misprint or an inadvertent misstatement. Thus, ultimately, we conclude that Nut Hustler's argument is that Mr. Ellis's inspection of the harvester was a "use" but not a "reasonably anticipated use" of the machine.

27

Louisiana court opinions containing factual findings for manufacturers on the reasonably anticipated use issue. In Nut Hustler's case sample, however, the facts and circumstances, the products, the product uses, and the product users differ considerably from those in the present case. Nevertheless, Nut Hustler argues that these Louisiana court decisions, none of which involved a pecan harvester, somehow show that the jury was unreasonable in finding for Mr. Ellis on the reasonably anticipated use issue in the present case.

Nut Hustler asserts that "[t]he Louisiana decisions over the last ten years leave no doubt that the answer to that question must be in the negative" and that "[t]here is a pattern in all of these cases, and the pattern dictates the result in this case." Thus, there is an excluded middle in Nut Hustler's argument. Nut Hustler does not even attempt to explain exactly how the widely-varying facts and circumstances of its sample of cases demonstrate that no reasonable jury could have found for Mr. Ellis on the quite different anticipated use issue created by the unique circumstances, product, and use in the present case.

More important, as indicated in our discussion of the distinction between interpretations of law and findings of fact in Louisiana cases, the findings of fact on the issue of reasonably anticipated use in Nut Hustler's case sample do not constitute creations or interpretations of Louisiana law. Therefore, those

28

factual findings are not binding on federal courts or juries in diversity cases. Furthermore, as noted previously it has long been settled in this circuit that a federal court may not base its ruling upon a motion for judgment as a matter of law (or, formerly, for a judgment notwithstanding the verdict) upon findings of facts in Louisiana cases in a diversity civil jury action. See Wright, 198 F.2d at 307-08; Miskell, 439 F.2d at 791; Shirey, 327 F.2d at 552 (5th Cir. 1964); Inkenbrandt, 306 F.2d at 119; St. Paul Fire & Marine Ins. Co., 302 F.2d at 328; Davis, 266 F.2d at 764; LaBuff, 126 F.Supp. at 763; Boeing, 411 F.2d at 379 n.4 (Rives, J., concurring).

Nut Hustler's other argument in support of its motion for judgment as a matter of law is also without merit; it alludes to several different theories but fully develops none, perhaps because they are not supported by the evidence and the applicable law. Essentially, Nut Hustler recounts evidence tending to show that (1) Mr. Spotsville had removed and failed to replace some of the original shields covering other moving parts (different from the spinning drive shaft) of the pecan harvester, and (2) after the original bolt in the drive shaft and several of its replacements had broken, Mr. Spotsville inserted a longer bolt that protruded further out of the drive shaft than the original bolt. From this premise Nut Hustler leaps to the conclusion that "[t]he sum total of all of the foregoing testimony, when compared to the results in

29

analogous cases, requires the conclusion that plaintiff was not engaged in a 'reasonably anticipated use' of the product at the time of this incident."

This argument seems to be an amalgam of Nut Hustler's main argument based on factually "analogous" Louisiana cases (discussed and rejected above), impermissible attacks upon the verdict's finding that the product was unreasonably dangerous and a proximate cause of the accident not challenged on appeal, and the notion that the manufacturer reasonably should not have expected an ordinary farm worker like Mr. Ellis to use the pecan harvester with a long replacement bolt in its drive shaft, a slightly different approach from its earlier argument that a field inspection during the harvester's dysfunctional operation was not reasonably expected.

Nut Hustler did not challenge the jury's verdict that Mr. Ellis's injury was proximately caused by Nut Hustler's product that was unreasonably dangerous in design or in its lack of an adequate warning. Consequently, Nut Hustler's second argument is precluded insofar as it suggests that Mr. Spotsville's negligence was the sole proximate cause of the accident; or insofar as it suggests that the product was not unreasonably dangerous at the time it left the control of the manufacturer but was rendered unreasonably dangerous only because of an alteration or modification of the product that reasonably should not have been anticipated. These arguments cannot be entertained for two reasons. First, they are

30

outside the scope of Nut Hustler's sole appeal from the denial of judgment as a matter of law based exclusively on the contention that Mr. Ellis's injury did not arise from a reasonably anticipated use of the product. Second, they are inconsistent with the unchallenged jury verdicts that assigned only 30% of the fault to Mr. Spotsville and that found that the pecan harvester was unreasonably dangerous in its design or because of an inadequate warning and that the unreasonably dangerous nature of the pecan harvester was the cause of Mr. Ellis's accident.

Moreover, there was a legally sufficient basis for rejecting Nut Hustler's arguments and finding that Mr. Ellis's injury arose from a reasonably anticipated use of the pecan harvester. The evidence is undisputed that the accident was not caused by the missing original equipment shields but by the drive shaft which was uncovered or unshielded when it left the control of the manufacturer. The record contains evidence from which a reasonable jury could find that Nut Hustler's owners actually or reasonably should have anticipated that farmers would replace broken bolts in the harvester's drive shaft by using longer bolts if they did not have bolts of the exact length as the original bolts on hand. One of Nut Hustler's owners, Mr. Goforth, stated that replacing a broken bolt on a harvester by "rigging" it with a larger bolt was "a typical farmer deal"–one that was common among "all your farmers." There also was a legally sufficient basis for the jury's

31

finding that at the time the product left the manufacturer's control there existed an effective alternative design, i.e., an economical and feasible safety shield covering the open drive shaft, that was capable of preventing Mr. Ellis's injury regardless of the length of the bolt in the drive shaft. Furthermore, there was sufficient evidence from which the jury reasonably could find that because of the absence of a drive shaft safety shield, Mr. Ellis's jacket would have become caught in the open drive shaft even if the original bolt had not been replaced: there was evidence that the original bolt was not flush with the shaft but also protruded, although to a lesser extent than the replacement bolt; and there was evidence from which a reasonable jury could find that the spinning drive shaft, even if its surface had been smooth, would have been capable of catching and wrapping a farm worker's clothing. There was legally sufficient evidence from which a reasonable jury could have concluded that the breaking of the original bolt in the drive shaft and its replacement with the more protrusive bolt was either a change arising from ordinary wear and tear or a change that Nut Hustler should reasonably expect to be made by an ordinary person in the same or similar circumstances.[17] Finally, for all of the foregoing reasons,

---

[17]As indicated above, Mr. Goforth, one of Nut Hustler's owners, gave testimony from which a reasonable jury could have concluded that the replacement of broken bolts in the harvester's drive shaft happened frequently, constituted changes "arising from ordinary wear and tear," and that the type of change effected by Mr.

including the reasons given in our discussion concluding that the type of field inspection used by Mr. Ellis was a reasonably expected use of the harvester, the evidence was legally sufficient to support a finding that Nut Hustler reasonably should have expected ordinary farm workers to use the harvester with a longer bolt in the drive shaft in the circumstances presented by this case.

Nut Hustler also argues that Mr. Ellis's conduct in wearing a loose-fitting coat while inspecting the harvester was not reasonably expected in connection with his use of the machine. However, there was no evidence that the jacket was either unusual apparel for a pecan farm worker or extremely ill-fitted for Mr. Ellis. Mr. Ellis testified without contradiction that Mr. Spotsville and Mr. Valle wore similar jackets in the pecan orchards. No witness testified that the jacket was unusual or unreasonably big or long for Mr. Ellis or his work. Pecans are harvested in the fall and winter. The jury reasonably could have found that Nut Hustler reasonably should have expected that farm workers using the harvester to pick up pecans in February would wear long, heavy jackets during their work on cold days. See Johnston v. Hartford Ins. Co., 623 So. 2d 35, 36-37 (La.Ct.App. 1st

Spotsville was a "[r]easonably anticipated alteration or modification." See La. Rev. Stat. § 9:2800.53(8). This finding was also supported by Mr. Ellis's testimony that the drive shaft bolt had broken and had been replaced by Mr. Spotsville on a number of occasions.

33

Cir. 1993) ("[T]he manufacturer is obligated to anticipate the environment in which the product will be used and to give notice of the potential risks arising from [reasonably anticipated] use in the foreseeable environment.")(citing Bloxom v. Bloxom, 512 So. 2d 839, 843 (La. 1987)).

Applying the standards dictated by Rule 50 and Reeves it is apparent that Nut Hustler is not entitled to a judgment as a matter of law. After reviewing all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, refraining from credibility determinations or weighing the evidence, and disregarding all evidence favorable to the moving party that the jury was not required to believe, we conclude that there was a legally sufficient evidentiary basis for a reasonable jury to find for Mr. Ellis on the issue of reasonably anticipated use.


III.  Motion For a New Trial

The jury answered affirmatively interrogatory number three ("Do you find from a preponderance of the evidence that Elton Ellis was negligent in his use of the pecan harvester?") and negatively interrogatory number four ("Do you find from a preponderance of the evidence that Elton Ellis'[s] negligence was a cause of the accident?"). Nut Hustler moved for a new trial on these questions, arguing that these answers are inconsistent and irreconcilable.

The trial court rejected the argument and the motion.

The trial court's ruling on a motion for a new trial must be given deference and will only be reversed if the trial court abused its discretion. See Browning-Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 278 (1989); Smith v. Riceland Foods, Inc., 151 F.3d 813, 821 (8th Cir. 1998) ("A district court has discretion to decide whether a jury's findings on a verdict form are incomplete, confusing, or inconsistent and whether to resubmit the claim to the jury. The district judge, who has observed the jury during the trial, prepared the special verdict questions and explained them to the jury, is in the best position to determine whether the answers reflect confusion or uncertainty.")(citations and quotations omitted); see also Cantellops v. Alvaro-Chapel, 234 F.3d 741, 744 (1st Cir. 2000). We conclude that the trial court's ruling was not an abuse of its decision.

"We are required under the Seventh Amendment to make a concerted effort to reconcile apparent inconsistencies in answers to special verdicts if at all possible." Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines Ltd., 369 U.S. 355, 364 (1962); Griffin, 471 F.2d 911, 915 (5th Cir. 1973). See also Watkins v. Fibreboard Corp., 994 F.2d 253, 256 (5th Cir. 1993), overruled on other grounds by White v. Grinfas, 809 F.2d 1157, 1161 (5th Cir. 1987); Davis v. W. Cmty. Hosp., 755 F.2d 455, 465 (5th Cir. 1985);

35

<u>Crossland v. Canteen Corp.</u>, 711 F.2d 714, 725 (5th Cir. 1983); <u>Mercer v. Long Mfg. N.C., Inc.</u>, 665 F.2d 61, 65 (5th Cir. 1982); <u>Wright v. Kroeger Corp.</u>, 422 F.2d 176, 178 (5th Cir. 1970). Therefore, courts "must attempt to reconcile the jury's findings, by exegesis, if necessary, before we are free to disregard the jury's verdict and remand the case for new trial." <u>Gallick v. B & O R.R. Co.</u>, 372 U.S. 108, 119 (1963); <u>Mercer</u>, 665 F.2d at 65.

This court in <u>Snyder v. Trepagnier</u>, 142 F.3d 791, 800 (5th Cir. 1998), set forth our test for whether seemingly inconsistent jury verdicts may be reconciled as follows:

> In reviewing jury answers to special verdicts, we must make a "concerted effort to reconcile apparent inconsistencies . . . if at all possible." <u>Alverez v. J. Ray McDermott & Co.</u>, 674 F.2d 1037, 1040 (5th Cir. 1982). We must ask whether "the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the form of the issue or alternative selective answers prescribed by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict." <u>Griffin v. Matherne</u>, 471 F.2d 911, 915 (5th Cir. 1973). Only if there is no view of the case that will make the jury's answers consistent may we set aside its decision. <u>Id.</u>

In considering whether the seemingly inconsistent verdicts may be reconciled, the court must view the evidence in the light most favorable to upholding the jury's decision by a finding of consistency. <u>See</u> <u>Hiltgen v. Sumrall</u>, 47 F.3d 695, 701 (5th Cir. 1995). Additionally, the special verdicts "must be construed in light of the surrounding circumstances" of the case. <u>Kroeger</u>, 422 F.2d at 178; <u>Davis</u>, 755 F.2d 465.

36

For example, in <u>Hiltgen</u>, 47 F.3d at 698-703, the jury returned separate special verdicts finding that the plaintiff's deceased husband had been negligent but that his negligence was not the legal cause of his injuries.  We found no abuse of discretion in the trial court's entry of judgment in favor of the plaintiff because the evidence presented to the jury, when viewed in the light most favorable to finding consistency between the verdicts, supported the reconciliation of the jury's findings.  <u>Id.</u> at 701-703.  The evidence showed that when his van rear-ended a tractor trailer, the decedent was traveling at night on an interstate highway at sixty-five miles per hour with only one functioning headlight.  While reasonable jurors would certainly find that driving at night with one headlight is negligent, the jury also heard evidence that the defendant tractor-trailer driver had just pulled onto the interstate from the shoulder and was traveling at twenty to twenty-five miles per hour, with no lights on, when the accident occurred.  On the basis of that evidence, we decided, reasonable jurors could also conclude that it was solely the defendant's negligence that caused the accident.

In Mr. Ellis's case the jury was presented with evidence that he had consumed alcohol before he began operating the harvester on the day of the accident.  The jury's verdict finding him negligent may be reasonably interpreted as reflecting that his consumption of alcohol before operating farm machinery was a form of negligence.

37

However, when viewed in the light most favorable to upholding the judgment by reconciling the verdicts, the jury reasonably could have concluded that although Ellis may have been negligent in this respect, the amount of his consumption had not been sufficient to be a likely cause of his accident. Therefore, the jury's "answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted, even though the form of the issue or alternative selective answers prescribed by the judge may have been the likely cause of the difficulty and largely produced the apparent conflict." Alverez, 674 F.2d at 1040.

> We must be especially careful when reviewing the sufficiency of the evidence where the party seeking relief, the defendant[] in this case, had the burden of proof on the issue in question. We reiterate that defendants had the burden of establishing that [Ellis]'s negligence was a proximate cause of the . . . accident. Although we must uphold the jury's findings that [Ellis] acted negligently, we cannot say that the defendant[] presented such proof that a reasonable jury could only conclude that [Ellis]'s negligence was a factual and legal cause of the accident. Therefore, we hold that the jury's findings regarding negligence and proximate causation are supported by legally sufficient evidence.

Hiltgen, 47 F.3d at 703 (citations omitted).

The foregoing reconciliation of the jury's verdicts is consistent with Louisiana law. Under Louisiana Civil Code article 2323, juries are asked to allocate fault among the parties responsible for the plaintiff's injury. To be attributed "fault" under Louisiana law, (1) one must have taken action that falls below the standard of care for a reasonable person under the

38

circumstances, and (2) one's substandard conduct must have <u>caused</u> the injury. <u>See</u> La. Civ. Code art. 2323 (requiring the trier of fact to allocate fault to a person only if he caused or contributed to the injury); La. Code Civ. P. art. 1812(C) (same). In common vernacular, one's "substandard conduct" is often referred to as "negligence," even when that conduct does not cause injury such that the law attributes fault to the actor. <u>See</u> <u>Turner v. Parish of Jefferson</u>, 721 So. 2d 64, 67 (La.Ct.App. 5th Cir. 1998)("La.C.C.P. Art. 1812(C) directs the jury to attribute a percentage of fault to a party only after it has determined that such party is negligent and that this negligence was a . . . cause of the accident."); <u>see also</u> FRANK L. MARAIST & THOMAS C. GALLIGAN, LOUISIANA TORT LAW § 3.1 (1st ed. 1993) ("Frequently . . . the term 'negligence' is used to describe careless conduct (duty and breach); thus, it sometimes is said that a defendant, although negligent, is not liable, because . . . causation . . . is lacking."). Thus, Louisiana law permits a jury to find a party negligent but also find that his negligence was not a legal cause of the accident. Furthermore, the form of the verdict clearly left open this possibility, and Nut Hustler did not object to it during the trial.

In conclusion, because it is possible to reconcile the jury's special verdicts, the district court did not abuse its discretion in denying Nut Hustler's motion for new trial and entering judgment

on the jury's verdict.  <u>Atlantic & Gulf Stevedores</u>, 369 U.S. at 364; <u>Gallick</u>, 372 U.S. at 119.

Conclusion

For the reasons assigned, the judgment of the district court is AFFIRMED.